Kevin McKENNA, Plaintiff,

v.

COUNTY OF NASSAU, Defendant.

No. CV 81-1814.

United States District Court,
E. D. New York.

April 28, 1982.

Sanders & Mandell, Roslyn, N.Y., for plaintiff.

Edward G. McCabe, Nassau County Atty. by Edward T. O'Brien, Mineola, N.Y., for defendant.

## MEMORANDUM AND ORDER

GEORGE C. PRATT, District Judge:

In the early evening of March 1, 1981, 18 year old Kevin McKenna was stopped for a traffic violation. A routine computer check revealed that a bench warrant had been issued several months earlier because he had failed to pay a $150 fine which had been levied in an unrelated proceeding. McKenna was taken into custody, first to the local precinct and finally, at about 9:30 p. m., he was placed in the Nassau County Correctional Center (NCCC) at East Meadow.

During his initial processing at the NCCC, one of the corrections officers told him that he had better be prepared to fight for his life because the other inmates would harm him. McKenna was assigned for the night to "tier B–1, front", a celled portion of the facility set aside for male, new arrivals who were under 21 years of age, a classification required by state regulation. Tier B–1, front consisted of a row of cells, each of which opened onto an eight foot wide corridor-like area that ran the entire length of the row of cells. When McKenna was placed in the tier, all the cells were occupied with two prisoners in each. He was given a mattress and told to use it for sleeping on the floor in the corridor-like area. Approximately 20 other inmates were also assigned to the same area.

Soon after the entrance gate to tier B–1 was locked behind him, McKenna was set upon by a number of the prisoners who took property and his mattress from him and beat him continuously for a period of 45 minutes to an hour. McKenna testified that he cried out a number of times. All four guards on duty denied that any cries for help had been heard from tier B–1 that evening. They further testified, without challenge, that only bars and 20 to 30 feet of open space separated tier B–1 from the area where at least one, and as many as four, guards were stationed. Every half hour one of the guards walked an inspection tour of all of B floor, including tier B–1.

The next morning, March 2, 1981, McKenna was taken before a Nassau County district judge who was conducting arraignments. When his parents appeared and paid his $150 fine, McKenna was released. Immediately following his release, McKenna went with his parents and lawyer to the district attorney's office where he filed a formal complaint about the severe beating he had received.

An investigation was conducted by the district attorney's office. There was no record at the NCCC of any incident on the night in question; there was no record of any complaint having been made by McKenna to any of the guards or to anyone else prior to his being released from custody; McKenna was unable to identify from a photo spread of 59 pictures any of the people who had beaten him. For lack of evidence, therefore, the investigation was discontinued.

McKenna, however, brought this suit against the warden of the NCCC and the County of Nassau, pursuant to 42 U.S.C. § 1983, seeking damages for the depriva-

tion of his constitutional right to be safe and free from assaults and beatings by fellow inmates while he was in custody at the NCCC.

During the trial, plaintiff withdrew his claim against the warden, apparently in an attempt to block defendants' presentation of evidence showing good faith on the part of the individual defendant. Without the individual defendant, good faith became irrelevant. *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

With Nassau County, a municipal corporation, as the only remaining defendant, the action was submitted to the jury on the liability portion of the bifurcated trial on three special verdicts by which the jury found:

1. that plaintiff Kevin McKenna was assaulted and beaten on tier B–1 in substantially the manner he described;

2. that the policy and practice of defendant County of Nassau for housing prisoners on tier B–1 was a proximate cause of plaintiff's injuries; and

3. that deliberate indifference by defendant County of Nassau was a proximate cause of plaintiff's injuries.[1]

The jury was instructed to approach special verdicts # 2 and # 3 separately, as presenting different views of the same circumstances. They were told to decide each of the two questions as if the other question had not been asked. In this way, the jury's findings were obtained based on two entirely different sources of potential liability, municipal policy and deliberate indifference.

After the jury's special verdicts were returned, the parties stipulated that if a damage trial were held the total amount of damages, costs and attorney's fees that plaintiff would recover would be the sum of $25,000. It was further stipulated that if a new trial were to be required because the liability determinations were reversed on appeal, the $25,000 figure for damages, costs and attorney's fees would apply as well to the second trial, so that only the issue of liability would have to be tried again.

Attacking all three of the special verdicts, defendant then moved both for judgment notwithstanding the verdict and for a new trial. From the bench, the court denied the motions, stating that a written decision would be made addressing each of the defendant's contentions. This is that decision.[2]

■ The only claim defendant advances with respect to special verdict # 1 relates to admissibility of evidence. That verdict presented to the jury the question of plaintiff's credibility on his version of what happened to him. Defendant argued strenuously that the absence of any record to support plaintiff's claim, the absence of any complaint to anyone before his release from custody, and plaintiff's inability to identify anyone who assaulted him, all demonstrated

---

1. Negligence was not an issue presented to the jury, the court having dismissed plaintiff's state law negligence claims at the end of the plaintiff's case on the ground that the only negligence shown was that of the sheriff or his employees, and under state law the acts of the sheriff, who operates the NCCC, cannot form the basis for liability of the county.

2. Among the essential features of this case which distinguish it from a number of other superficially similar actions are:

A. Only the county, a municipal corporation, is a defendant; there are no remaining claims against the individual corrections officers or their superiors.

B. The plaintiff's claim was not of an individual, isolated incident such as might arise from a sudden fight between two prisoners. Far from a "one-on-one" incident, it was a gang assault several of which had occurred in the recent past.

C. Under *Monroe* and *Monell* the county cannot be held liable on a respondeat superior theory for misconduct of its employees.

D. Under *Owen v. City of Independence, supra,* the county has no good faith immunity for liability arising out of its policies, practices and customs.

E. Under a *Monell* approach, (liability for a municipal policy, *Monell v. Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)), there was no issue as to what the policy was, so that causation was the only issue requiring jury resolution.

that plaintiff's explanation of how he became injured was false. By its verdict, the jury resolved this credibility dispute in plaintiff's favor.

Defendant challenges that verdict on the ground that the court should not have excluded from the jury's consideration evidence that three days before he was confined in the NCCC, plaintiff, with several other youths, had stopped an elderly couple in their automobile, substantially vandalized their car, doused the car and its driver with diesel fuel and attempted to set both on fire. Since there was no evidence to link the February 27th incident with the injuries that plaintiff obviously had suffered by the time he appeared in court on March 2, the court sustained plaintiff's objection to the offered testimony, satisfied that the balancing analysis required by FRE 403, required exclusion of the proffered evidence. Since the February 27th event was irrelevant to any issue before the jury in the liability phase of the case, its probative value was minimal. Testimony about the incident would have seriously prejudiced the plaintiff because of its inflammatory nature; moreover, it would have required plaintiff to present still other evidence addressed to an irrelevant series of events which showed no more than plaintiff's bad character. Probative value was therefore substantially outweighed by danger of unfair prejudice and considerations of confusion of issues and delay. FRE 403.

Defendant's argument against interrogatory # 2 is grounded, essentially, in its contention that the county cannot be held liable for its policies and practices in housing prisoners in the NCCC. When the court submitted question # 2 to the jury it instructed the jury that there was no fact issue about what the policy was. It was the county that had built and operated the facility which was designed to have a maximum capacity of 517 inmates. When an increasing population, rising crime rates, and enforcement policies by county officials increased the number of inmates, the county's response was a policy and practice of confining prisoners in tier B–1 in the manner described above, i.e., having two prisoners per locked cell, with a group which varied in number from day to day sleeping on cots or mattresses in the corridor area, but not separated from each other.

The jury was instructed that it was not to evaluate the policy as to whether it was wise or unwise, or good or bad, but instead was merely to determine whether the policy for housing prisoners had been a proximate cause of plaintiff's injuries. Under standard instructions covering proximate cause, the possibility of multiple causes, and the liability of the county for foreseeable, probable consequences of its policies, the jury found that the county's policy for housing prisoners on tier B–1 was a proximate cause of plaintiff's injuries.

Despite defendant's argument to the contrary, the court is satisfied that the county may be held liable for the assault upon plaintiff by a large number of fellow inmates when that assault was caused by the county's policy of confining many inmates in a single area. The evidence established clearly that the county had been housing approximately 800 inmates in a facility designed for 517; that it had been ordered by the state department of corrections to reduce the inmate population to design capacity; that although overtime payments to corrections officers had been increased, the county had not altered its policy of directly surveying the tiers only once every half hour; and that no electronic equipment for either audio or visual monitoring of the cell areas had been installed.

Plaintiff did not claim that what happened to him was the result of misconduct on the part of any particular corrections officer or officers. His case was presented to the jury on a theory that the overcrowding of the facility itself is what caused his injuries, and under *Monell v. Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a municipality may be held liable when one of its policies, practices or customs causes the deprivation of someone's constitutional right.

The county argues that it acted reasonably and in good faith, and it points to the uncontested evidence of its problems in operating the NCCC, the relatively rapid growth in inmate population during 1979 and 1980, its efforts to negotiate contracts for housing some of the inmates in other institutions, its efforts at designing and constructing new facilities, and its authorization of substantial overtime to the corrections officers so as to provide additional supervision for the crowded conditions. Plaintiff argues that the county had notice of a hazardous situation and he points to his counter-evidence that there had been other assaults on inmates by other inmates in the overcrowded facility. Specifically one 17-year-old former inmate testified that he had been assaulted and gang-raped on the same tier B–1, front, only a few days before the McKenna incident. However, with respect to the issues presented by special verdict # 2, evidence of neither good faith nor notice was relevant in light of the Supreme Court's decision in *Owen v. City of Independence, supra.* The jury found that the county's policy caused plaintiff's injuries. Under *Monell* nothing more was needed to establish liability. Accordingly, defendant's motion to set aside special verdict # 2 was denied.

Defendant's attack on special verdict # 3 rests primarily upon the contention that in finding deliberate indifference the jury necessarily found the county liable for conduct of its employees upon a principle of respondeat superior, a doctrine that has no application to a municipal corporation under § 1983. *See Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Monell, supra.* There was some evidence from which an inference of deliberate indifference on the part of the four corrections officers might have been drawn, due to their failure to respond to the cries for help which plaintiff testified he made. Nevertheless, the thrust of the plaintiff's case and of the court's charge on the deliberate indifference issue focused upon the county itself and its supervising personnel, so as to stress the institutional nature of the deliberate indifference which would be required. ·

That deliberate indifference of supervisors to violence done to persons within the custody or control of a governmental agency may give rise to corporate liability can no longer be questioned. *Owens v. Haas,* 601 F.2d 1242 (CA2 1979); *Doe v. New York City Dep't of Social Services,* 649 F.2d 134 (CA2 1981). While both *Owens* and *Doe* involved injuries to a specific individual of which it was claimed supervisors had specific knowledge, the underlying principle of both decisions is that the municipality may be held liable where its supervisory personnel know of specific risks or hazards to a prisoner (*Owens*) or a foster child (*Doe*), and fail to act to ameliorate the risk or hazard.

The court recognizes that the foreseeability, reasonable person and probability standards of its charge draw heavily on negligence law, and that it is still an open question whether the proper standard of conduct under § 1983 can be negligence, even after the decision of the Supreme Court in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). It appears to the court, however, that by using a foreseeability test for causation, reasonable controls are established to restrain any tendency toward unchecked liability against the municipality.

The thrust of the plaintiff's case and of the court's charge was upon the county as an institution, the general overcrowding of the facility, particularly tier B–1, and the steps and attitudes shown by the county and its officials for coping with and resolving the increased hazard of assaults resulting from the overcrowded facility. In this context, there was ample evidence on which the jury could have based its determination that deliberate indifference by the county was a proximate cause of plaintiff's injuries. Consequently, the motion to set aside special verdict # 3 was also denied.

Liability having been established against the county, by the special verdicts, and damages including costs and attorney's fees having been stipulated at $25,000, the clerk is directed to enter judgment in favor

of the plaintiff, Kevin McKenna, and against defendant County of Nassau in the sum of $25,000. The action against Walter Flood is dismissed with prejudice and without costs.

SO ORDERED.