George ENG, Plaintiff,

v.

Thomas A. COUGHLIN, III, et al., Defendants.

No. 83 CIV. 5628 (PKL).

United States District Court, S.D. New York.

April 18, 1988.

———

Cahill, Gordon & Reindel, New York City (Ellen H. Woodbury, of counsel), for plaintiff.

Robert Abrams, Atty. Gen. of State of N.Y., New York City (Judith T. Kramer, Frederick S. Cohen, of counsel), for defendants.

## OPINION AND ORDER

LEISURE, District Judge:

Plaintiff George Eng ("Eng") seeks monetary damages pursuant to the Civil Rights Act, 42 U.S.C. § 1983, for an alleged deprivation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution. Plaintiff claims that, while an inmate in the Special Housing Unit ("SHU") of the Green Haven Correctional Facility ("Green Haven"), he was assaulted on four separate occasions[1] by defendants Michael E. Dean, John J. Tierney, J.E. Doane, Cooper "John Doe," and Sergeant James P. Meehan. He also alleges that he was subsequently refused medical care, Amended Complaint ¶ 11, and that such refusal constituted a deliberate indifference to his medical needs. Eng Memo, at 35. Finally, Eng asserts that his confinement in a plexiglass cell for almost two weeks without a disciplinary proceeding or notice of the reason for his confinement violated clearly established constitutional standards. Amended Complaint ¶ 9; Eng Memo, at 35. Defendants have moved to dismiss Eng's complaint pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, or, in the alternative, for summary judgment pursuant to Rule 56. Because matters outside the pleadings were presented to the Court, the motion will be treated as one for summary judgment as provided in Rule 12(c).

## FACTUAL BACKGROUND

The following facts are derived from the affidavits and Local Rule 3(g) statements of the parties relating to the motion, and exhibits submitted to the Court. Eng was transferred on December 28, 1982, to the SHU unit of Green Haven from the Auburn Correctional Facility SHU in upstate New York. Upon his arrival he was not furnished with any written rules of the facility. Affidavit of George Eng, sworn to on December 4, 1986, at ¶ 8 (hereinafter "Eng Aff."). Defendants maintain that Eng was apprised of an internal, unwritten policy at SHU that inmates must keep their hands in their pockets when outside their cells unless otherwise instructed, and that a deviation from this rule would constitute an attempted assault. Transcript of deposition of George Eng, October 9, 1986 (hereinafter "Eng Dep."), annexed as Exhibit V to Affidavit of Frederick S. Cohen, Esq., sworn to on October 20, 1986, at 11–13 (hereinafter "Cohen Aff.") Plaintiff, however, alleges he was not shown any documents about the Green Haven SHU rules. *Id.* at 12.

### The first incident

On January 12, 1983, plaintiff was instructed to place his hands on the wall in order to be frisked by Correction Officers Dean and Cooper. According to Eng, Dean and Cooper told plaintiff to remove his hands from the wall and place them in his pockets. As he did so, defendants grabbed plaintiff's hands, twisted them behind his back and shoved his head into the wall. Amended Complaint ¶ 2. Defendants claim they believed plaintiff removed his hands from the wall as a prelude to an assault on them and merely restrained plaintiff and placed his hands back on the wall, and thus no assault occurred on plaintiff's person. Cohen Aff., at ¶ 12; Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint or, in the Alternative, for Summary Judgment in Their Favor, at 15 (hereinafter "Def. Memo").

---

1. Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment (hereinafter "Eng Memo") alleges a fifth incident of assault on September 30, 1983. That incident was not included in plaintiff's complaint, and consequently, that issue will not be addressed.

It is not disputed by the parties that an incident did occur on that date, although there are no medical or other available records which confirm plaintiff's allegations that his head was shoved against a wall. Plaintiff alleges that the use of force was unusually severe, but defendants maintain that there was no use of force. Specifically, defendants maintain that because no video recording was preserved of the event,[2] no use of force occurred between plaintiff and defendants Dean and Cooper. Def. Memo, at 22. Other records, however, indicate that Dean filed a use of force report, *see* Incident Report, annexed as Exhibit K to Eng Aff., and that two video tapes of the plaintiff from January 12, 1983, existed at least until May of 1985. Woodbury Aff., Exhibit 54.[3]

*The second incident*

On the morning of January 13, 1983, plaintiff was escorted by Correction Officers Dean and Doane to an Adjustment Committee Hearing on charges that had been filed by Dean the previous day. Plaintiff took along disposition papers to show the Adjustment Committee. Before entering the hearing office, plaintiff was pat-frisked. When the frisk was over, he was told to place his hands back in his pockets. The parties disagree as to what happened next. Plaintiff alleges he placed one hand in his pocket and held out his other hand in order to take back his disposition papers, at which time Dean tackled the plaintiff, lifted him in the air and threw him, back first, to the floor and then began to choke him. Eng Aff., at ¶ 24. Plaintiff also alleges that no verbal warning, instruction, or order was given by anyone before he was assaulted. *Id.* Dean maintains that because plaintiff removed his hand from his pocket without permission, he perceived that plaintiff was about to

commit an assault and thus "placed" plaintiff on the floor in order to physically restrain him. Affidavit of Michael Dean, Green Haven Correction Officer, sworn to on October 24, 1986, annexed as Exhibit E to Cohen Aff., at ¶ 7 (hereinafter "Dean Aff."). As a consequence of this incident, plaintiff suffered several injuries. Later that day he was escorted by Dean and Doane to the nurse's office for a use of force exam.[4]

*The third incident*

Once inside the nurse's office, plaintiff alleges he started to sit down when defendant Dean lunged at the plaintiff and brought him to the floor. Dean then began "slashing" and punching Eng's face, while Doane kicked the plaintiff and handcuffed him. Eng Aff., at ¶ 29. Plaintiff alleges he sustained a puncture wound on his shin and a laceration across his nose as a result of this incident.

Defendants claim plaintiff removed his hands from his pockets, thus leading them to believe another attempted assault would occur. Dean Aff., at ¶ 8; Affidavit of James Doane, sworn to on October 1986, annexed as Exhibit J–4 to Cohen Aff., at ¶¶ 5, 6. Defendants claim they were forced physically to restrain the plaintiff. Specifically, Dean placed plaintiff in a bear-hug and brought him to the floor. Cohen Aff., at ¶ 25; January 13, 1983, Use of Force Report, annexed as Exhibit 53 to Woodbury Aff. Doane then handcuffed plaintiff. Defendant Nurse Moore then entered the room and examined the plaintiff. Defendants claim that while Moore dressed Eng's wounds, he never complained to the nurse about Dean stabbing him in the shin. Def. Memo at 29.

There are conflicting medical records and testimony as to how Eng incurred his inju-

**2.** The Green Haven Administration or the Department of Correctional Services was required to maintain and operate a video monitoring system at Green Haven 24 hours a day and seven days a week. Affidavit of Ellen H. Woodbury, Esq., sworn to on December 5, 1986, Exhibit 50 (hereinafter "Woodbury Aff.").

**3.** Only those recordings which contained incidents in which a use of force has occurred are

preserved beyond a period of 30 days. Cohen Aff., at ¶ 13.

**4.** Inmates are routinely examined after an officer has exerted physical force on their persons. Cohen Aff., at ¶ 24; Affirmation of Sergeant James P. Meehan, annexed as Exhibit J–1 to Cohen Aff., at ¶ 2 (hereinafter "Meehan Aff.").

ries. A record of plaintiff's January 13, 1983 medical examination conducted by Moore indicates that plaintiff suffered a "superficial" laceration and that the stab wound may have been an old wound that reopened. Ambulatory Health Record, annexed as Exhibit K to Cohen Aff., entries for January 14, 1983 (hereinafter "Eng Health Record"). Eng's Affidavit, however, contradicts Moore's characterization of the laceration:

> On the morning of January 14, 1983 I was seen on A.M. sick call by Registered Physician's Assistant (RPA) Youssef at my cell. She told me the puncture wound on my shin was serious and that it needed to be dressed and that I might need a tetanus shot. C.O. Dean accompanied RPA Youssef and when they went from in front of my cell into the next tank I heard Dean tell RPA Youssef not to record the wound. I heard her tell him that the wound was "serious" and that "he didn't do that to himself" and that she was recording it.

Eng Aff., at ¶ 36.

*The fourth incident*

The fourth alleged incident occurred on January 14, 1983, when plaintiff was being transferred to a plexiglass covered cell. Plaintiff asked the reason for his transfer and where his legal papers were. Eng Aff., at ¶ 38. Sergeant Meehan then instructed Dean and Doane to place plaintiff in the cell. Plaintiff alleges that he "was attacked, thrown to the floor, punched and kicked in the side on [his] back, thighs, calves and also genitals and then turned over and handcuffed behind [his] back." Eng Aff., at ¶ 38. He was then handcuffed and placed inside the cell. Once inside the cell, Eng alleges that Dean continued punching him and defendant Tierney stomped plaintiff's head to the floor with his foot. *Id.*

Defendants' version of the incident is different from that of the plaintiff. They claim Eng punched Dean in the face and that Dean, Doane, Tierney and Barto then wrestled plaintiff to the floor and restrained him, while Sgt. Meehan handcuffed him. Dean Aff., at ¶ 10; Meehan Aff., at ¶ 4; Affidavit of Keith Barto, Green Haven Correction Officer, annexed as Exhibit J–5 to Cohen Aff., at ¶ 3 (hereinafter "Barto Aff."); Report of Injury to Michael Dean, annexed as Exhibit M to Cohen Aff. According to Eng, some time after the guards left the cell, RPA Ken Palley cursorily examined him through the cell bars and said he would return to treat him and conduct a full examination, but he never returned. Eng Aff., at ¶ 40.

When plaintiff was examined later that afternoon, he was told he would need to have his chin sutured. RPA Riklin then placed a sterile cloth over Eng's face, Eng Memo., at 25, but plaintiff refused to allow his eyes to be covered for fear that the correction officers who were present would again assault him. Eng Aff., at ¶ 44. As a result, Eng did not have his chin sutured. Plaintiff claims that the following day, Moore stated that since plaintiff previously refused to have his chin sutured, by law he was not required to do anything. Eng Aff., at ¶ 46; Eng Memo, at 26. Defendants again disagree with Eng as to this version of the facts and allege that Moore examined the plaintiff and determined that because the wound had begun to heal, suturing was no longer necessary. Eng Health Record, entry for January 15, 1983.

Plaintiff also maintains he was kept in the "strip cell" area in a plexiglass covered cell from January 14, 1983, to January 26, 1983, where he was denied privileges and basic necessities including hot water, soap, and a change of clothing. Amended Complaint ¶¶ 7, 9; Eng Aff., at ¶ 49. Eng claims his confinement resulted from an order issued by defendant Captain Miles against the plaintiff for the January 13, 1983 incident. Amended Complaint ¶ 9. On April 12, 1983, the charges were reversed for lack of substantiating evidence. Reversal of Superintendent's Proceeding, annexed as Exhibit Q to Woodbury Aff.

## DISCUSSION

All defendants seek summary judgment on two grounds. First, they assert that their actions are protected under the doctrine of qualified immunity. Second, they

assert that the Eleventh Amendment bars the suit against them. Defendants Coughlin and Scully claim their lack of personal involvement in the case warrants entry of partial summary judgment in their favor. Likewise, defendant Riklin claims that the statute of limitations bars a suit against him and therefore partial summary judgment should be granted in his favor. Before turning to each of these issues, it is helpful to examine the standard for granting summary judgment.

### Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." As the Supreme Court has noted, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which were designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1) (citation omitted). "In considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are factual issues to be tried," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985)), and "'to resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought.'" *Hathaway v. Coughlin*, 841 F.2d 48, 50 (2d Cir. 1988) (quoting *Schiess–Froriep Corp. v. S.S. Finnsailor*, 574 F.2d 123, 126 (2d Cir. 1978)).

The Court must first look to the substantive law governing the case to determine which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 106 S.Ct. at 2510. Once the Court has determined what facts are material, it must then determine whether there is a genuine issue as to a material fact. At this stage "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 2511. The standard for summary judgment thus "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex, supra*, 106 S.Ct. at 2553. The burden on the moving party will be "discharged by 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support the nonmoving party's case." *Anderson, supra*, 106 S.Ct. at 2511. The burden then shifts to the nonmoving party to show that there is a genuine issue of fact for trial.

### Qualified Immunity

In actions under 42 U.S.C. § 1983, qualified or good faith immunity is an affirmative defense that must be pleaded by the defendant official. *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982). A defendant, however, will not be shielded under this doctrine if the official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff." *Id.*

It is well established that a *pro se* complaint in a civil rights action must be liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed. 2d 652 (1972), even though plaintiff has since obtained legal counsel. *Morello v. James*, 810 F.2d 344, 346 (2d Cir.1987); *see Salahuddin v. Coughlin*, 781 F.2d 24, 28–29 (2d Cir.1986). In the case at bar, Eng contends that his constitutional rights were violated by defendants' actions and subsequent lack of action in January of 1983. First, plaintiff alleges that defendants arbitrarily and maliciously inflicted force on his person and thus violated his Eighth Amendment right to be free of cruel and unusual punishment. Eng Memo, at 34. Defendants maintain that the force applied by the correction officers was minimal and solely for the purpose of restraining the plaintiff from assaulting them.

In a leading opinion on the standards to be used in determining whether there has been a violation of a prisoner's constitutional rights, Judge Friendly stated that

> a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied sub nom. John v. Johnson*, 414 U.S. 1033, 94 S.Ct 462, 38 L.Ed.2d 324 (1973). Other relevant factors include "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response." *Whitley v. Albers*, 475 U.S. 312, 321, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986) (prisoner shot by a prison guard during hostage situation alleged violations of his Eighth and Fourteenth Amendment rights).

In addressing the discretion of prison guards, the Supreme Court held that " '[p]rison administrators ... should be ac-corded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.' " *Whitley v. Albers*, 475 U.S. at 321–22, 106 S.Ct. at 1085 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979)). Although *Whitley v. Albers* involved a violent confrontation, actual unrest, and a conflict between the guards and a prisoner, the Court extended wide deference to preventive measures intended to reduce the incidence of these or any other breaches of prison discipline. The Court stated, however, that actions taken in bad faith and for no legitimate purpose would not be insulated from review. *Whitley v. Albers, supra*, 475 U.S. at 322, 106 S.Ct. at 1085. "[C]ourts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives." *Id.* Similarly, this Court has held that efforts to maintain discipline cannot justify the use of excessive force. *See, e.g., Vargas v. Correa*, 416 F.Supp. 266 (S.D.N.Y.1976).

■ Generally, correction officers, in light of their experience with prisoners, are in a position to judge whether or not restraint of a prisoner is necessary to maintain or restore discipline, and how much restraint is necessary. In the present case, defendants claim that three of the four incidents were a direct result of plaintiff's removing his hands from his pockets, which led the correction officers to believe an attempted assault would occur. They claim that in the first incident, Dean perceived a threat from Eng and that Dean's reaction was "moderate in the extreme." Def. Memo, at 15. According to the defendants, Eng removed his hands from the wall and Dean merely placed plaintiff's hands back on the wall. *Id.*

On January 13, 1983, the date of the second incident, defendants claim that an assault was perceived to be in progress when Eng suddenly removed his hands from his pants pockets. Def. Memo, at 16. Defendants allege that in order to prevent

the infliction of injury to themselves, they grabbed Eng in a bear-hug and placed him on the floor. *Id.*

The third incident, according to the defendants, resulted from what they believed to be another attempted assault on them. *Id.* at 17. Specifically, Dean placed plaintiff in a bear-hug, brought him to the floor and Doane applied handcuffs to plaintiff's wrists. *Id.* at 17, 18. The last incident occurred when Eng allegedly punched Dean in the face. *Id.* at 18. Defendants claim Eng was wrestled to the floor while Meehan placed handcuffs on Eng. *Id.* at 19. The last incident appears to have yielded most of Eng's alleged injuries. Defendants, however, claim that on this last occasion, the force used was minimal under the circumstances, Affirmation of John Tierney, Green Haven Correction Officer, annexed as Exhibit J-3 to Cohen Aff., at ¶ 8, that it was only the amount of force necessary to restrain the plaintiff, Doane Aff., at ¶ 10, and that the amount of force used was not excessive. Barto Aff., at ¶ 3.

▆ The facts, however, must be construed in the light most favorable to the nonmoving party. *See Hathaway v. Coughlin, supra,* 841 F.2d at 50. According to plaintiff's version of the facts, his head was shoved against a wall during the first incident; he suffered injuries to his lower back, left elbow and neck as a result of the second incident; the third incident resulted in a puncture wound on his right shin, a cut across his nose and injuries to various other parts of his body; and finally, the fourth incident resulted in a gash on his chin that required suturing, two broken teeth, abrasions and bruises to several parts of his body and possibly a chipped chin bone. Given the conflicting evidence concerning the cause and extent of plaintiff's injuries and whether those injuries resulted from minimal or necessary force, it is clear that the Court cannot reach a finding concerning those issues on a motion for summary judgment. *Corselli v. Coughlin,* 842 F.2d 23, 26–27 (2d Cir.1988). Summary judgment is thus denied on that issue.

▆ Eng's second claim asserts that his confinement in a plexiglass cell without adequate ventilation, light, hot water, soap or toothpaste from January 14, 1983, to January 26, 1983, without any disciplinary proceeding or notice of the reason for his confinement violated clearly established constitutional standards. Amended Complaint, at ¶ 9; Eng Memo, at 34–35.

In *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), the Supreme Court held that "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Id.* at 468, 103 S.Ct. at 869. The Court went on to note, however, that although the Fourteenth Amendment does not create a liberty interest in being free from certain types of confinement, the State may create such an interest "through its enactment of certain statutory or regulatory measures." *Id.* at 469, 103 S.Ct. at 870. *See Sher v. Coughlin,* 739 F.2d 77, 80–81 (2d Cir.1984); *Salahuddin v. Coughlin,* 674 F.Supp. 1048, 1053–54 (S.D.N.Y.1987).

▆ Plaintiff in this case has a liberty interest in a timely hearing and adequate sanitary conditions pursuant to state statutes and regulations. *See* N.Y.Corr.Law § 137(6); 7 N.Y.C.R.R. §§ 251D.1, 301. The Second Circuit has held that an inmate facing a disciplinary hearing which could deprive him of substantial rights must have at least 24 hours advance notice of the charges against him and must be informed of the reasons for the action taken, and the evidence relied upon by the committee in reaching its decision. *McCann v. Coughlin,* 698 F.2d 112, 121 (2d Cir.1983) (citing *Wolff v. McDonnell,* 418 U.S. 539, 564, 94 S.Ct. 2963, 2978–79, 41 L.Ed.2d 935 (1974)); *see McKinnon v. Patterson,* 568 F.2d 930, 939 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978); *see also Crooks v. Warne,* 516 F.2d 837, 839 (2d Cir.1975); *Powell v. Ward,* 392 F.Supp. 628, 629–30 (S.D.N.Y.1975), *aff'd*

*as modified,* 542 F.2d 101 (2d Cir.1976) (per curiam). The Supreme Court in *Wolff v. McDonnell* held that such notice is required before a prisoner can be deprived of good time or placed in solitary confinement. *Wolff v. McDonnell,* 418 U.S. at 571 n. 19, 94 S.Ct. at 2892 n. 19. Because solitary confinement includes placement in a "strip cell", *McKinnon v. Patterson,* 568 F.2d at 936, it follows that such a confinement triggers the notice requirements stated in *Wolff v. McDonnell.* Because there is no indication in the record that Eng was given notice or a hearing before being placed into the plexiglass cell, summary judgment may not be granted for defendants on this issue.

■ Third, plaintiff contends that the refusal to provide him with medical care after one of the January 14, 1983 incidents constituted deliberate indifference to his medical needs. Eng Memo, at 35. The Supreme Court in *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976), held that while "deliberate indifference" to a prisoner's serious medical needs is cruel and unusual punishment, not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment. *Id.* at 105, 97 S.Ct. at 291–92. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106, 97 S.Ct. at 292. "[O]nly such indifference ... can offend 'evolving standards of decency' in violation of the Eighth Amendment. *Id.* (citations omitted).

It appears from the affidavits and exhibits filed by the defendants that Eng's claim of "deliberate indifference" to his medical needs may well be without merit since he received medical attention, and the records maintained by the prison officials do substantiate the conclusion that defendants provided plaintiff with comprehensive, if not doting, health care. Nonetheless, Eng's affidavit does raise material factual disputes, irrespective of their likely resolution. *See Hathaway v. Coughlin, supra,* 841 F.2d at 50 (citing *Archer v. Dutcher,*

733 F.2d 14, 16 (2d Cir.1984)). For example, Eng's claim that Nurse Moore refused to suture his chin, Eng Memo, at 26, and the conversation that he alleges he heard between RPA Youssef and Dean in which Dean asked Youssef not to record plaintiff's shin wound on his medical records, Eng Aff., at ¶ 36, raise questions of fact relating to whether plaintiff's lack of medical treatment subjected him to an infliction of unnecessary pain and suffering violative of his Eighth Amendment rights. The role of a district court on a motion for summary judgment, however, is not to make findings of fact. *See Archer v. Dutcher,* 733 F.2d at 17. Construing the facts in the light most favorable to the party against whom summary judgment is sought, plaintiff's *pro se* complaint alleges possible violations of his constitutional rights by Moore and Palley which defeat their qualified immunity defense, raise questions of material fact, and preclude entry of summary judgment on this issue.

### The Eleventh Amendment

■ The Eleventh Amendment states that "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or Citizens or Subjects of any Foreign State." U.S. Const., amend. XI; *see Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 3057, 57 L.Ed.2d 1114 (1978) (per curiam) (suits against a state are barred unless the state has consented to suit). Accordingly, suits in which the State is named as a defendant are barred by the Eleventh Amendment. *See Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). It is also well established that "the [Eleventh] Amendment bars suits not only against the State when it is the named party but also when it is the party in fact." *Scheuer v. Rhodes,* 416 U.S. 232, 237, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974). Thus, the applicability of the Eleventh Amendment "is to be determined not by the mere names of the titular parties but by the essential nature and effect of the proceeding, as it appears from the entire

record." *Id.* Therefore, when a suit is brought against a state official, the question is whether that suit is actually against the state itself. *See Pennhurst*, 465 U.S. at 101, 104 S.Ct. at 908. Generally, suits for monetary awards from the state treasury are deemed suits against the state and are therefore barred. *See Edelman v. Jordan*, 415 U.S. 651, 677, 94 S.Ct. 1347, 1362–63, 39 L.Ed.2d 662 (1974). In line with this reasoning, plaintiff's claim for monetary damages against the defendants in their official capacities is barred by the Eleventh Amendment.

■ Plaintiff also seeks monetary damages from the defendants in their individual capacities (*i.e.* from the officials' personal funds). Amended Complaint, at 10. "[D]amages against individual defendants are a permissible remedy in some circumstances notwithstanding the fact that they hold public office." *Scheuer v. Rhodes, supra*, 416 U.S. at 238, 94 S.Ct. at 1687. Claims against public officials in their individual capacities are not barred by the Eleventh Amendment, *id.*, and the defendants are not entitled to summary judgment on Eng's claims for damages against defendants in their individual capacities.

■ According to Eng's Memorandum of Law, he also seeks declaratory and equitable relief against the defendants in their official capacities. Eng Memo, at 39. Eng's seeks a declaration of unconstitutionality as to practices of officials at Green Haven, but because he is no longer ·incarcerated at the Green Haven facility, his claims for equitable and declaratory relief are now moot. *See Beyah v. Coughlin*, 789 F.2d 986, 988 (2nd Cir.1986); *see also Preiser v. Newkirk*, 422 U.S. 395, 401–02, 95 S.Ct. 2330, 2334–35, 45 L.Ed.2d 272 (1975) (an actual controversy must exist at all stages of the case, not just when the complaint is filed).

For these reasons, summary judgment is granted in favor of the defendants as to the claims for monetary damages against them in their official capacities but denied as to the monetary claims against them in their individual capacities. Summary judg-

ment is also granted as to the claims for equitable and declaratory relief.

*Personal Involvement*

■ The Second Circuit has held that personal involvement of a defendant in the plaintiff's alleged constitutional deprivations is a prerequisite to an award of damages under 42 U.S.C. § 1983. *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir.1987); *McKinnon v. Patterson, supra*, 568 F.2d at 934; *Johnson v. Glick, supra*, 481 F.2d at 1034. Defendants claim that Thomas Coughlin, III, the Commissioner of Corrections of New York, and Charles Scully, the Green Haven Superintendent, are shielded from liability because of their lack of personal involvement in the matter. Def. Memo, at 48.

■ Normally, a supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue. *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986). A policy or custom may be inferred from acts or omissions of supervisory officials serious enough to amount to gross negligence or deliberate indifference to the constitutional rights of the plaintiff. *Villante v. Department of Corrections of the City of New York*, 786 F.2d 516, 519 (2d Cir.1986). In *Villante*, Judge Meskill outlined situations in which a supervisory official may be held liable under section 1983:

Supervisors may be charged with knowledge of unconstitutional behavior when they persistently violate statutory duties to inquire about such behavior, and to be responsible for preventing it, *Doe v. NYC Dep't of Social Services*, 649 F.2d 134 (2d Cir.1981), *reaff'd*, 709 F.2d 782 (2d Cir.), *cert. denied* 464 U.S. 864 [104 S.Ct. 195, 78 L.Ed.2d 171] (1983), or when they know of specific risks or hazards to a prisoner and fail to take action to protect him, *McKenna v. County of Nassau*, 538 F.Supp. 737, 741 (E.D.N.Y.), (Pratt, J.), *aff'd*, 714 F.2d 115 (2d Cir. 1982). Furthermore, the behavior of subordinate prison officials may evidence a failure to train or supervise sufficiently egregious to amount to gross negligence

or deliberate indifference on the part of their superiors.... *Owens v. Haas*, 601 F.2d 1242, 1246–47 (2d Cir.), *cert. denied*, 444 U.S. 980 [100 S.Ct. 483, 62 L.Ed.2d 407] (1979).

\* \* \* \* \* \*

Therefore, liability may be based on ... official acquiescence in the continued existence of prison conditions which, themselves, are so injurious to prisoners that they amount to a constitutional violation, *see Riley v. Jeffes*, 777 F.2d 143, 147–48 (3d Cir.1985); *see also McKenna v. County of Nassau*, 538 F.Supp. at 740. *Villante v. Department of Corrections*, *supra*, 786 F.2d at 519–20.

Plaintiff alleges that under New York Correction Law § 138(5) and (6),[5] Coughlin was on notice of Green Haven's unwritten and allegedly unconstitutional "hands in the pocket" rule, since the commissioner of the department of correctional services is required to review all rules and regulations pertaining to inmates. Eng Memo, at 43. Eng also asserts that Coughlin was aware (through letters sent by Eng) of the conditions at the Green Haven SHU, Eng Memo, at 44, and of the various alleged attacks on him, Amended Complaint, at ¶ 10.

In a recent case, an inmate at Green Haven alleged that Coughlin "knowingly and intentionally allow[ed] (the alleged) physical abuse to be viciously carried out and failed to provide any supervision of correction officials adequate to prevent such physical ... abuses...." *Payne v. Coughlin*, No. 82 Civ. 2284 (S.D.N.Y. May 6, 1987) [available on WESTLAW, 1987 WL 10739] (LEXIS, Genfed library, Courts file). In that case, Honorable Charles S. Haight, Jr., District Judge of this Court, held that "[t]hese allegations ... state in general terms a type of personal involvement by [a] supervisory [official] cognizable under section 1983." *Id.*

Eng's Amended Complaint states in pertinent part that he had written to Coughlin several times before the incidents occurred alleging that there had been previous threats and violations similar to the ones included in the amended complaint. Amended Complaint ¶ 10. These allegations, however, are too vague to support the conclusion that Coughlin should have been aware that there would be any possible assaults on the plaintiff. Moreover, because Eng wrote to Coughlin only on the evening of January 14, 1983, after the last alleged incident took place, Coughlin could not have been in a position to prevent any of the alleged attacks. In addition, Coughlin did write back to Eng concerning the four alleged incidents, informing him that he directed the Inspector General's office to take appropriate action. Letter from Coughlin to Eng, dated February 23, 1983, annexed as Exhibit T to Eng Aff. Therefore, it cannot be said that Coughlin failed to take action to protect Eng. *See McKenna v. County of Nassau*, *supra*, 538 F.Supp. at 741. Coughlin, therefore is not a proper party to this action since plaintiff has not demonstrated sufficient facts to evidence the Commissioner's personal involvement in the case.

■ Personal involvement is also imputed to defendant Scully through his knowledge of plaintiff's alleged deprivations of constitutional rights. Plaintiff's argument rests upon the Second Circuit's decision that a supervisory official, after learning of the violation through a report, may have failed to remedy the wrong. *Williams v. Smith*, 781 F.2d at 323 (citing *United States ex rel. Larkins v. Oswald*, 510 F.2d 583, 589 (2d Cir.1975)). In the present case, the exhibits presented to the Court show that Scully was aware of the "hands in the pocket" rule, Cohen Aff., Exhibit A; Transcript of deposition of Ronald Miles,

---

**5.** New York Correction Law § 138 states:

(5) No inmate shall be disciplined except for a violation of a published and posted written rule or regulation, a copy of which has been provided the inmate.

(6) All rules and regulations pertaining to inmates established by the department of correctional services and all rules and regula-

tions pertaining to inmates established by any institutional staff at any state correctional facility shall be reviewed annually by the commissioner of the department of correctional services.

New York Correction Law § 138 (McKinney 1987).

January 28, 1985, annexed as Exhibit 6 to Woodbury Aff. at 52, and failed to take any steps to correct this practice. In addition, Eng claims that on January 13, 1983, when Scully was in the SHU, he told him about the assaults on him by the defendant correction officers and showed him the resulting injuries, and told him he wrote to him the day before "describing what was happening and requesting his help." Eng Aff., at ¶ 35; Eng Memo, at 42. Scully maintains he recalls no such conversation. Affirmation of Charles Scully, annexed as Exhibit J–2 to Cohen Aff., at ¶ 3. Defendants additionally contend that because Scully is responsible for thousands of inmates and correctional personnel, it is unlikely that he would have had access to Eng's complaints. Def. Memo, at 50.

Again, it should be noted that on a summary judgment motion the facts must be viewed in the light most favorable to the nonmoving party. The Court must therefore accept Eng's assertion that he wrote to Scully the evening of the first alleged attack, and personally complained and showed him bruises he allegedly sustained only a few hours after the third alleged attack, and asked him to investigate, view the video tapes and prevent further assaults. Amended Complaint ¶ 6. Accepting these claims as true, they show sufficient personal involvement on Scully's part to deny partial summary judgment in his favor. *See Morales v. New York State Department of Correction*, 842 F.2d 27, 30–31 (2d Cir.1988).

*Timeliness of Service*

 Defendant Riklin seeks summary judgment on the ground that he did not receive personal service of process within the statute of limitations period. Periods of limitations must, by statute, "be computed from the time the cause of action accrued." New York Civil Practice Law and Rules § 203(a); *Korry v. International Telephone & Telegraph Corporation*, 444 F.Supp. 193, 195 (S.D.N.Y.1978). The present cause of action accrued on January 14, 1983, the date of the last alleged assault in the amended complaint.

The Supreme Court has recently held that section 1983 claims are best character-

ized as personal injury actions, and that the state's statute of limitations for personal injury actions is to be applied. *Wilson v. Garcia*, 471 U.S. 261, 278, 105 S.Ct. 1938, 1948, 85 L.Ed.2d 254 (1985). New York has two statutes of limitations governing personal injury claims. Section 214(5) of the C.P.L.R. applies a three year statute of limitations for personal injury actions while section 215(3) prescribes a one year statute of limitations for eight intentional torts including assault and battery. Defendant Riklin contends that the one year statute of limitation period is the appropriate one to apply to this case. The Second Circuit has already determined that "section 214(5) is the general personal injury statute most analogous to section 1983 claims. Further, the three year limit of section 214(5) more faithfully represents the federal interest in providing an effective remedy for violations of civil rights than does the restrictive one year limit of section 215(3)." *Okure v. Owens*, 816 F.2d 45, 49 (2d Cir. 1987); *see also Salahuddin v. Harris*, 657 F.Supp. 369, 373 (S.D.N.Y.1987).

Because plaintiff's cause of action accrued on January 14, 1983, and defendant Riklin was personally served on May 2, 1986, beyond the three year limitations period, summary judgment will be entered for defendant Riklin.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is granted in part and denied in part to the following extent: 1) summary judgment is granted as to all claims against defendants Coughlin and Riklin; 2) summary judgment is granted as to monetary claims against all defendants in their official capacities; 3) the claims for declaratory and equitable relief are moot; and 4) summary judgment is denied as to all other claims. Counsel are hereby ordered to appear at a pre-trial conference on May 27, 1988, at 2:00 p.m. in Courtroom 36.

SO ORDERED.