**Grishelda BRYANT, Plaintiff,**

v.

**John J. MAFFUCCI, Dawn Thackeray, Yvonne Powell, Norwood Jackson, and Dr. Edward Allan, Defendants.**

**No. 85 Civ. 7863 (WCC).**

United States District Court,
S.D. New York.

Jan. 23, 1990.

Hughes Hubbard & Reed, New York City, for plaintiff (Jeff H. Galloway and Maia Caplan, of counsel).

Marilyn J. Slaatten, Westchester County Atty., White Plains, N.Y., for defendants (Mary C. Chapyak, Asst. County Atty., of counsel).

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

Plaintiff brings this civil rights action alleging that her constitutional rights were violated by the defendants when they failed to provide the necessary procedures to terminate her unwanted pregnancy. Defendants now move for summary judgment pursuant to Rule 56, Fed.R.Civ.P. For the reasons discussed below, defendants' motion is granted.

## FACTS

On July 31, 1985, plaintiff Grishelda Bryant was committed to the custody of the Westchester County Department of Correction. When plaintiff told a booking agent that she believed she was pregnant, Westchester County Correctional Facility scheduled a sonogram for plaintiff at the Westchester County Medical Center on August 1, 1985. The sonogram indicated that plaintiff was in her twenty-first week of pregnancy. Plaintiff then informed a nurse at the Westchester County Correction Facility that she wanted her pregnancy terminated. She was told on August 2, 1985 by a nurse to put her request in writing. By letters to defendants Thackeray and Dr. Allan dated August 2, 1985, plaintiff requested an abortion.

According to his testimony and a notation on the letter, Dr. Allan received plaintiff's letter on August 8, 1985 and, through his office, arranged for an appointment to be scheduled at the Kings County Hospital Center, where abortions were performed on pregnant female inmates housed at the Westchester County Correctional Facility who were more than twelve weeks pregnant. The appointment was scheduled for August 19, 1985, allegedly the earliest appointment available. According to the Westchester County Medical Center composite sonogram results, which found plaintiff to be in her twenty-first week on August 1, 1985, the August 19, 1985 appointment was within the twenty-four week legally permissible time period, which would have expired on August 22, 1985. Unaware of the status of her request, plaintiff inquired and was informed by defendants Thackeray and Powell that an appointment was scheduled for her to receive an abortion. By memorandum dated August 12, 1985, Dr. Allan advised defendant Jackson that the plaintiff was in her twenty-second week of pregnancy, that an abortion had been scheduled at Kings County Hospital Center for August 19, 1985 and that transportation had been arranged. A copy of this memo was sent to defendant Thackeray.

On August 19, 1985, plaintiff was transported to Kings County Hospital Center by the Westchester County Department of Correction. A second sonogram was performed which, as interpreted by Kings County Hospital personnel, indicated that plaintiff was twenty-four weeks pregnant, a gestation period beyond the legal limit. Consequently, the abortion was not performed and plaintiff was returned to the Westchester County Correctional Facility. On November 29, 1985, plaintiff was re-

leased to the custody of the New York City Department of Correction. On December 4, 1985, plaintiff gave birth to a daughter while in the custody of the New York City Department of Correction.

At all relevant times cited in the complaint, John J. Maffucci was Commissioner of the Westchester County Department of Correction, Norwood Jackson was Warden of the Westchester County Correctional Facility, Dawn Thackeray and Yvonne Powell were Assistant Wardens respectively in charge of and assigned to the Women's Unit, and Dr. Edward Allan was Director of Correctional Health Services under the auspices of the Westchester County Medical Center. Medical services are provided to all inmates housed at the Westchester County Correctional Facility by the Westchester County Correctional Health Services.

## DISCUSSION

### I. Standard for Summary Judgment

Under Fed.R.Civ.P. 56(c), a court may enter summary judgment only if it finds that there is no genuine issue as to any material fact and that, based on the undisputed facts, the moving party is entitled to a judgment as a matter of law. *See e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Horn & Hardart Co. v. Pillsbury Co.,* 888 F.2d 8, 10 (2d Cir. 1989); *Montana v. First Federal Savings & Loan Ass'n,* 869 F.2d 100, 103 (2d Cir. 1989); *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The movant bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

The burden then shifts to the party opposing the motion "to produce sufficient evidence to support a claim that a genuine factual issue exists." *Gutwein v. Roche Laboratories,* 739 F.2d 93, 95 (2d Cir.1984).

In determining whether a genuine issue exists, the court must resolve all ambiguities and draw all reasonable inferences in favor of the party opposing the motion. *See Horn & Hardart,* 888 F.2d at 10; *Montana,* 869 F.2d at 103; *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987). However, the opponent may not rest on rote allegations, but must set forth specific facts showing that there is a genuine issue for trial. Fed.R. Civ.P. 56(e). Thus, the mere existence of some "metaphysical doubt" concerning the facts will not defeat summary judgment, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986), nor will speculation or conjecture as to the true nature of the facts. *See Quarles v. General Motors Corp.,* 758 F.2d 839, 840 (2d Cir.1985).

The applicable substantive law will identify which facts are material. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. If the dispute about a material fact is genuine—that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party—summary judgment is inappropriate. *Id.* However, if the evidence, even when viewed in the non-movant's favor, is legally insufficient to support a verdict for that party, summary judgment may be granted. *See id.* at 249, 252, 106 S.Ct. at 2510, 2512; *Shearson Lehman CMO, Inc. v. TCF Banking & Savings,* 710 F.Supp. 67, 69 (S.D.N.Y.1989).

### II. Plaintiff's Civil Rights Claims

Plaintiff seeks monetary damages pursuant to the Civil Rights Act, 42 U.S.C. § 1983,[1] for an alleged deprivation of her rights under the Eighth and Fourteenth

---

1. 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Amendments of the United States Constitution, as well as her constitutional privacy rights, on the grounds that defendants, in their individual and official capacities, "deprived [her] of the necessary procedures to terminate her unwanted pregnancy." Plaintiff alleges that defendants' delay in scheduling her abortion at Kings County Hospital Center exhibited deliberate indifference to both her serious medical needs and her privacy rights. Defendants maintain that plaintiff did not have any constitutional right to a publicly-funded abortion while incarcerated and that even if she did have such a protected right, defendants did not act with deliberate indifference nor did the facility's policy or custom evidence deliberate indifference to sustain plaintiff's 42 U.S.C. § 1983 claim. Moreover, defendants Maffucci and Jackson contend that plaintiff has failed to show their personal involvement adequate to state a claim against them in their individual capacities.

### A. Standard for Constitutional Violation

■ The standard for determining whether there has been an unconstitutional denial[2] of medical care is whether there has been deliberate indifference to a prisoner's serious medical need, illness or injury.[3] *See Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Todaro v.*

*Ward*, 565 F.2d 48, 52 (2d Cir.1977); *Bishop v. Stoneman*, 508 F.2d 1224, 1225 (2d Cir.1974). In *Estelle*, the Supreme Court held that in order to state a cognizable claim under the Eighth Amendment, a prisoner must allege acts or omissions sufficiently harmful to show deliberate indifference because only such indifference offends the "evolving standards of decency" in violation of the Eighth Amendment. *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292. The Court defined deliberate indifference as the "unnecessary and wanton infliction of pain." *Id.* at 104, 97 S.Ct. at 291.

A similar test applies for establishing a violation of other constitutional rights, including the right to privacy.[4] *See Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); *Taylor v. Ledbetter*, 818 F.2d 791, 793–94 (11th Cir.1987), *cert. denied*, —— U.S. ——, 109 S.Ct. 1337, 103 L.Ed.2d 808 (1989). Thus, inquiry into the characterization of defendants' acts or omissions is identical for both of plaintiff's alleged violations.[5]

In this Circuit, the case law has attempted to define the contours of a prisoner's constitutional right to medical treatment. The Second Circuit Court has interpreted the deliberate indifference standard enunciated in *Estelle* to mean that "a constitu-

**2.** In addition to the outright denial of medical care, complete or partial, delay of necessary treatment may rise to the level of a denial. *See Todaro*, 565 F.2d at 51. Clearly, the delay in the present case was the equivalent of denial because the gestation period exceeded the legal limit for termination, leaving plaintiff to carry her pregnancy to term.

**3.** If either of the two elements, deliberate indifference or serious medical need, necessary to invoke *Estelle* is absent, plaintiff's action fails to state a cognizable claim. *See Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir.1979) ("test under *Estelle* is two-pronged"). Because plaintiff fails to present disputed facts that defendants' acts or omissions or the official policy evidenced deliberate indifference, the Court need not determine whether a request for an abortion, absent a medical justification for same, constitutes a medical request protected by the Eighth Amendment or the right to privacy.

**4.** In *Daniels v. Williams*, 474 U.S. 327, 334, 106 S.Ct. 662, 666, 88 L.Ed.2d 662 (1986), the Supreme Court expressly declined to consider

whether "something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the Due Process Clause," or apparently any other constitutional protections. *See Davidson*, 474 U.S. at 349, 106 S.Ct. at 671, (Brennan, J., dissenting), 360, (Blackmun, J. and Marshall, J., dissenting).

Although the Second Circuit Court has at times used the terms gross negligence and deliberate indifference as synonymous, it has articulated that deliberate indifference is a more stringent standard. *See Doe v. New York City Dep't of Social Services*, 649 F.2d 134, 143 (2d Cir.1981).

**5.** Although plaintiff was a detainee in August, 1985, it is settled law that the due process rights of detainees are at least as great as the Eighth Amendment rights of convicted inmates. *See City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983); *Liscio v. Warren*, 718 F.Supp. 1074, 1080 (D.Conn.1989).

tional right is stated when prison officials intentionally deny access to medical care or interfere with prescribed treatment." *Todaro,* 565 F.2d at 52; *Nilsson v. Coughlin,* 1987 WL 12823, 1987 U.S. Dist. LEXIS 5340 (S.D.N.Y. June 16, 1987).

In *Todaro,* the Second Circuit Court recognized that to hold a municipality liable under § 1983, it is well-settled that while one instance of medical care denied or delayed may be due to negligence, "repeated examples of such treatment bespeak a deliberate indifference by prison authorities to the agony engendered by haphazard and ill-conceived procedures." *Todaro,* 565 F.2d at 52; *see Bishop v. Stoneman,* 508 F.2d 1224, 1226 (2d Cir.1974).

This Court acknowledges that ordinarily, whether a defendant or a municipality's policy or custom exhibited deliberate indifference to a serious medical need or to a privacy right is a question of fact to be considered by a jury and therefore not appropriate for summary judgment. *See Hathaway v. Coughlin,* 841 F.2d 48, 50–51 (2d Cir.1988); *Archer v. Dutcher,* 733 F.2d 14, 15–17 (2d Cir.1984); *Eng v. Coughlin,* 684 F.Supp. 56, 64 (S.D.N.Y.1988). However, this action presents the more unusual situation in which the plaintiff cannot adduce enough evidence to support a jury verdict in her favor that prison officials intentionally denied access to medical care or interfered with prescribed treatment. *See e.g., Lewis v. New York City Dep't of Correction,* 1988 WL 85445, 1988 U.S.Dist. LEXIS 8845 (S.D.N.Y. Aug. 12, 1988). Nor is the evidence legally sufficient to find municipal liability.

In the above cases cited by plaintiff, each plaintiff had raised material factual disputes which the courts deemed sufficient to deny summary judgment, irrespective of their likely resolution. In *Archer v. Dutcher,* the plaintiff identified defendants' intentional efforts to delay her access to medical treatment when she was in extreme pain. Plaintiff's brief stated that prison officials and staff demonstrated wanton disregard for her as "she lay in her prison cell, large with child and suffering torturous cramping and vaginal bleeding."

*Archer v. Dutcher,* 733 F.2d 14, 15 (2d Cir.1984). The Second Circuit Court thus concluded that plaintiff had raised material factual issues to state a claim under *Estelle.* Similarly, in *Eng v. Coughlin,* the plaintiff claimed that the nurse had refused to suture his chin and that he overheard a conversation in which the correctional officer asked the physician's assistant not to record plaintiff's wound on his medical records. *Eng v. Coughlin,* 684 F.Supp. 56, 64 (S.D.N.Y.1988). Construing the facts in the light most favorable to the party against whom summary judgment was sought, the district court concluded that these allegations of intentional conduct raised material questions of fact which precluded summary judgment. In the last of the Second Circuit cases cited by plaintiff, the plaintiff in *Hathaway v. Coughlin* alleged, and the Court of Appeals agreed, that defendants' delay of over two years in arranging surgery to correct broken pins in his hip could have amounted to deliberate indifference and therefore reversed the district court's grant of summary judgment. *Hathaway v. Coughlin,* 841 F.2d 48, 50 (2d Cir.1988).

While those cases may have contained genuine issues of material fact, the case at bar does not. No disputed material facts preclude a determination in this case as a matter of law that defendants did not act or fail to act in a way that amounts to deliberate indifference to plaintiff's alleged serious medical need or a privacy right.

### B. Suit against Defendants in their Individual Capacities

In order to prevail in a Section 1983 action against an individual, a plaintiff's allegations must indicate some personal involvement by a defendant in the claimed wrongdoing. *See McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978); *Johnson v. Glick,* 481 F.2d 1028, 1034 (Friendly, J.). Defendants Maffucci and Jackson assert that plaintiff has not stated any personal involvement on

their parts in the alleged wrongdoing.[6]

Plaintiff's only allegation against then Commissioner Maffucci and then Warden Jackson in her amended complaint states that:

> On information and belief, defendants Maffucci and Jackson personally established the policies and customs and authorized the general practices that caused the unconstitutional denial of plaintiff's request to terminate her unwanted pregnancy.

The law is clear that defendants' high positions of authority alone do not justify imposition of personal liability. *See id.* A claim against defendants in their individual capacity "requires a showing of more than the linkage in the prison chain of command." *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985).[7]

■ Nonetheless, an official whose duties include seeing inmates, supervising pertinent units, and establishing procedures to be followed, is "personally involved," and thereby can be held liable for constitutional violations despite the supervisory character of their employment. *See Langley v. Coughlin,* 709 F.Supp. 482, 485–86 (S.D.N.Y.1989). Even highest level administrators can be found liable under § 1983 if:

> 1) "after learning of the violation through a report or appeal, [he or she] may have failed to remedy the wrong,"
> 2) "he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue," or
> 3) "he or she was grossly negligent in managing subordinates who caused the unlawful condition or event."

*Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986) (citations omitted); *accord Langley,* 709 F.Supp. at 486.

■ Although defendants deny any substantive responsibility for the medical treatment of inmates and deny any control over or direct responsibility for Correctional Health Services, the unit which dispensed medical treatment, they may not avoid liability by delegating the duty to provide medical care. *See Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 705 (11th Cir.1985) ("This duty [to provide medical care] is not absolved by contracting with an entity such as Prison Health Services.... In that sense, the county's duty is non-delegable."). The Department of Correction facilitated medical treatment as the liason between inmates and Correctional Health Services. Their deposition testimony shows that Maffucci and Jackson held management positions and were aware of the policy at issue, despite their lack of participation in the medical decisions. Furthermore, Dr. Allan sent a memo to Jackson regarding plaintiff's appointment. Plaintiff has therefore raised a genuine issue as to whether Maffucci, as Commissioner, and Jackson, as Warden, were sufficiently personally involved in the practices and procedures instituted and observed at Westchester County Correctional Facility and this Court now turns to the claim made by all defendants that plaintiff has failed to raise any genuine issue that they acted or failed to act with deliberate indifference.

Plaintiff alleges that Maffucci and Jackson established the policies and customs and authorized the general practices that led to the denial of her constitutional rights. In *Todaro,* the Second Circuit Court held that the medical practices and procedures at issue in that case were "constitutionally infirm" and that defendants could not avoid liability because they were either aware or should have been aware of conditions that "failed to meet even minimal standards." *Todaro,* 565 F.2d at 53. Because the policy and custom concerning abortion was not "constitutionally infirm,"[8] Maffucci and Jackson were neither aware nor should they have been aware of

---

6. The other defendants do not raise this argument and accordingly, I do not consider it with respect to them.

7. Nor can liability be imposed in this civil rights action on the basis of respondeat superior. *See*

*Monell v. Department of Social Services,* 436 U.S. 658, 663 n. 7, 691, 98 S.Ct. 2018, 2022 n. 7, 2036 (1978); *Ayers,* 780 F.2d at 210.

8. *See infra* p. 325–27.

any inadequacies in the Correctional Facility's practices. Thus, they did not act with the requisite deliberate indifference.

Plaintiff states that Thackeray and Powell did not respond to her request for an abortion and that, knowing plaintiff's pregnancy to be far along, they should have accelerated the appointment. First, both defendants testified that they spoke to plaintiff about the status of her request and then sought information from Correctional Health Services. Thackeray Dep. at 92–93, 95, Powell Dep. at 100–102. Plaintiff even admits that Powell informed her that an appointment had been set. Plaintiff Dep. at 52–54. Thackeray also testified that she received a telephone call from plaintiff's mother and informed her that an appointment had been scheduled for her daughter. Thackeray Dep. at 96. Second, Thackeray and Powell, while responsible for maintaining access to medical care, were neither trained nor authorized to make medical decisions concerning inmates. Thackeray Dep. at 91–96, Powell Dep. 100–103. Moreover, Thackeray testified that she was not privy to any medical decisions or records which were always delivered in sealed envelopes marked confidential. Thackeray Dep. at 47. Consequently, plaintiff has not asserted a genuine dispute to support a conclusion that these defendants' actions constitute deliberate indifference.

Plaintiff contends that, having received her request for an immediate abortion, defendant Dr. Allan waited approximately five or six days to schedule an appointment with Kings County Hospital Center, or, alternatively, that he scheduled the appointment on the eve of or after expiration of the permissible period. Dr. Allan testified at his deposition that when he received plaintiff's letter requesting an abortion on August 8th, as documented by the notation on the bottom of the letter, he immediately arranged the first available appointment with Kings County Hospital

Center that would fall within the twenty-four week legal limit as computed from the Westchester County Medical Center sonogram composite results. Deposition of Dr. Allan at 133–34. Although this Court is required to construe all reasonable inferences from the evidence in plaintiff's favor, plaintiff has not presented and apparently cannot present any evidence that refutes Dr. Allan's testimony that he received the letter on August 8th, even though it was written on August 2nd. Plaintiff admits that she has no personal knowledge concerning when Dr. Allan read her letter and attempts to dispute Dr. Allan's testimony by professing that she is entitled to a jury determination as to whether Dr. Allan's testimony is credible. Having, after adequate opportunity for discovery, presented no evidence that Dr. Allan received the letter before August 8th, plaintiff cannot prove that Dr. Allan's action was unduly delayed.

Similarly, plaintiff cannot contest the fact that Dr. Allan scheduled the appointment within the allowable time period based upon his medical opinion and the composite results of the Westchester County Medical Center sonogram before him. Although plaintiff repeatedly refers to the fact that the Westchester County Medical Center sonogram indicated an abdominal circumference fetal age of 21.9 weeks, she disregards that the sonogram also showed a head circumference fetal age of 20.4 weeks and a BPD and FL fetal age of 21 weeks, resulting in a composite fetal age of 21 weeks. Indeed, based on this sonogram and Dr. Allan's medical opinion, the appointment was set before, although close to, plaintiff's twenty-fourth week of pregnancy. Despite her efforts, plaintiff does not and cannot contradict this evidence.[9]

In *Estelle*, the United States Supreme Court distinguished medical malpractice cases cognizable under state tort law and

9. Plaintiff claims that her abortion was refused not only because of her late stage of pregnancy, but also because the Department of Corrections had failed to provide the proper paper work, indicating an independent claim of deliberate indifference. Because Kings County Hospital Center records reveal that the denial of the abortion was not grounded on missing paperwork, but was based only on the timing, this claim is unsubstantiated.

those rising to the level of a constitutional abridgement. The Court opined that:

[A] complaint that a physician has been negligent in diagnosing ... a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* 429 U.S. at 106, 97 S.Ct. at 292. While plaintiff's allegations may state a cognizable negligence or malpractice claim in state court, they do not set forth any basis for a finding that Dr. Allan acted with deliberate indifference and the undisputed facts make it clear that summary judgment should be granted.

### C. Suit against Defendants in their Official Capacities

■ Where defendants are sued in their official capacities, the suit is tantamount to a suit against a municipality, wherein the plaintiff has the burden to show that an official policy or custom, which amounted to a deliberate indifference to plaintiff's constitutional rights, caused the alleged deprivation of those rights. *See Monell v. Department of Social Services*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir.1983). If a municipal policy or custom is not itself unconstitutional, "considerably more proof than [a] single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *City of Oklahoma v. Tuttle*, 471 U.S. 808, 824, 105 S.Ct. 2427, 2436–37, 85 L.Ed.2d 791 (1985); *see Todaro*, 565 F.2d at 53. Again, the question in this motion for summary judgment is whether plaintiff has asserted a genuine issue that Westchester County Correctional Facility's policies or customs constitute deliberate indifference.[10] *See e.g., Fiacco v. City of Rensselaer*, 783 F.2d 319, 329 (2d Cir.1986) (considering sufficiency of the evidence in motion for directed verdict), *cert. denied*, 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987).

■ Although not officially adopted or formally documented, the practice by which pregnant inmates requested and obtained abortions was so settled as to be considered an official custom or policy. Defendants' depositions establish that the procedure followed in plaintiff's case was commonly known by correctional personnel and explained to pregnant inmates requesting an abortion. It is of no moment that there was no written operating procedure or formal approval. *See Monell*, 436 U.S. at 691, 98 S.Ct. at 2036.

Plaintiff asserts that the policy or custom of the Westchester County Corrections Department "virtually guaranteed the denial of an abortion to any inmate beyond her twentieth week of pregnancy." Plaintiff claims that because health care at Westchester County Correctional Facility was oriented towards gender neutral medical needs, the medical customs and policies exhibited a systemic deficiency with regard to the health care requirement unique to women, and that its treatment of abortion can only be characterized as deliberate indifference. The Court disagrees.[11]

In sum, the procedure concerning pregnant female inmates was as follows: Health care is provided to all inmates housed at the Westchester County Correctional Facility by Correctional Health Services. As a routine procedure, pregnant female inmates were given sonograms at the Westchester County Medical Center shortly after entering the Facility. Allan Dep. at 106. If a pregnant inmate, during the time of plaintiff's incarceration, wished

---

**10.** Plaintiff's claim that the approval of a Standard Operating Procedure for abortion requests shortly after her abortion was denied signifies some flaw in the prior procedure lacks merit. Subsequent occurrences or actions do not evidence deficiencies or admit liability in any way.

**11.** This Court only addresses the medical policy at issue in this case which concerns abortion and not health care provided to female inmates in general.

to obtain an abortion while incarcerated at the Westchester County Correctional Facility, she had to make a formal request in writing to Dr. Allan and Warden Thackeray in accordance with the procedure to request medical care or the request could be made on a separate piece of paper and given to the nursing staff or directly to Dr. Allan. Allan Dep. at 106–107. Because Correctional Health Service may not tell a pregnant woman to terminate her pregnancy, an inmate must specifically request an abortion before Correctional Health Service may act. Allan Dep. at 57–61.

Once a request was received, an examination to determine the gestation period would be conducted to determine where the abortion was to be performed. If the period was under twelve weeks, the abortion would be performed at Westchester County Medical Center, and if the period was greater than twelve weeks and did not exceed twenty-four weeks, the abortion would be performed at Kings County Hospital Center. In either case, the abortion would be paid for by the Westchester County Department of Correction. Allan Dep. at 107–109.

No permission from the Department of Correction was needed for an inmate to receive an abortion.[12] Allan Dep. at 49–50, Jackson Dep. at 70, Thackeray Dep. at 82. The Department of Correction facilitated the medical care provided by Correctional Health Services. Allan Dep. at 42–43, Maffucci Dep. at 14, 43–45, Jackson Dep. 12–15, Thackeray Dep. at 19–20, Powell Dep. at 12–14. The Department of Correction provided the safe and secure transportation of the inmate to and from the facility where the abortion was to be performed. Allan Dep. at 44–45, Maffucci Dep. at 36–38, Jackson Dep. at 35–37, Thackeray Dep. at 54–57, Powell Dep. at 13, 59.

The undisputed facts demonstrate that plaintiff's pregnant condition was noted and addressed by the Department of Correction. Plaintiff's medical request was relayed to Correctional Health Services and acted upon in sufficient time to schedule an appointment within what appeared to be the legally permissible time period. The Department of Correction may justifiably defer to Correctional Health Services the medical treatment of its inmates.

Obviously, Westchester County Correctional Facility need not provide the most efficient system for inmates to obtain abortions. Its practice, however, must not be deliberately indifferent to the needs of those inmates. Given the non-emergency nature of a pregnancy under usual situations including the instant one, in which no life-threatening or other uncommon exigency existed, the procedures provided by Westchester County Correctional Facility did not evidence deliberate indifference to plaintiff's constitutional rights. Thus, the policy at Westchester County Correctional Facility is not itself unconstitutional.

Even if there were an error in the chain that led to the denial of plaintiff's abortion, it was an isolated instance which does not rise to the level of a constitutional violation. Giving plaintiff the benefit of all inferences which the evidence fairly supports, and without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, this court finds that there can be but one conclusion as to the verdict that reasonable minds could reach.

At best, plaintiff's claim sounds in medical malpractice against Westchester County Medical Center for failure to interpret the sonogram correctly, or a simple negligence claim to be litigated in state court. Whether plaintiff has an actionable claim in the state courts is a question not before this Court.

---

**12.** This factor alone sufficiently distinguishes the present case from *Monmouth County Correctional Institutional Inmates v. Lanzaro,* 834 F.2d 326 (3rd Cir.1987), *cert. denied,* 486 U.S. 1006, 108 S.Ct. 1731, 100 L.Ed.2d 195 (1988), in which the court found that the correctional facility's policy of requiring pregnant inmates to obtain a court-ordered release to obtain an abortion ran afoul of prisoners' constitutional rights. Moreover, the Third Circuit Court focused its inquiry on whether elective, nontherapeutic constituted a serious medical need, an issue not addressed here.

## CONCLUSION

Because the undisputed facts show that defendants complied with federal constitutional mandates concerning the medical care and privacy rights of inmates, defendants' motion for summary judgment is hereby granted.

SO ORDERED.