Dean J. VILLANTE, Plaintiff-Appellant,

v.

**DEPARTMENT OF CORRECTIONS OF the CITY OF NEW YORK, and Mens Queens House of Detention, Defendants-Appellees.**

No. 604, Docket 85–2053.

United States Court of Appeals, Second Circuit.

Argued Dec. 19, 1985.

Decided March 19, 1986.

---

Iain A.W. Nasatir, New York City (Ira S. Sacks, Kaye, Scholer, Fierman, Hays & Handler, New York City, of counsel), for plaintiff-appellant,

Trudi Mara Schleifer, Office of the Corp. Counsel, New York City (Frederick A.O. Schwarz, Jr., Corp. Counsel, Leonard Koerner, Office of the Corp. Counsel, New York City, of counsel), for defendants-appellees.

Before MESKILL and PRATT, Circuit Judges, and MacMAHON,* District Judge.**

MESKILL, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Eastern District of New York, Wexler, J. The judgment was based on two orders. The first dismissed a portion of appellant's sec-

---

* Honorable Lloyd F. MacMahon, United States District Judge for the Southern District of New York, sitting by designation.

** Pursuant to § 0.14(b) of the Rules of this Court, this appeal is being determined by Judges Meskill and Pratt who are in agreement on this opinion. Judge MacMahon, who heard the argument, did not participate in the disposition of this appeal.

tion 1983 complaint as time barred and for failure to state a claim upon which relief could be granted. The second granted summary judgment in favor of appellees on the balance of appellant's federal claim and dismissed his pendent state claim for lack of subject matter jurisdiction.

We affirm in part, reverse in part and remand for further proceedings.

## BACKGROUND

Appellant Dean Villante is a former inmate of appellee Queens House of Detention for Men (QHD), a facility operated by appellee Department of Correction of the City of New York. Villante alleges that while he was incarcerated at the QHD he was first threatened with sexual abuse by other inmates and then repeatedly sodomized by force by one other inmate, the latter acts occurring while Villante was being held in a "protective custody" area of the QHD. Villante also claims that he was forced by his attacker to hide weapons in his cell and then was wrongfully punished when the weapons were discovered by prison officials.

Although Villante alleged a series of sexual assaults continuing over a period of about one month, his amended complaint focused on attacks allegedly occurring on November 22, 24 and 27, 1980. In a later deposition, Villante said that several inmates saw him being dragged from the prison dayroom to the cell where the attacks occurred and that certain inmates saw the forced acts of sodomy as well. He said that he had made repeated complaints about the assaulting inmate to a corrections officer he identified as Marcelly and that he had asked Marcelly to lock the door of his cell to prevent the attacks, but that Marcelly only laughed and opened the cell door. On November 28, 1980, shortly after Villante lodged a formal complaint with a deputy warden of the QHD about the sexual assaults, the assaulting inmate was moved to another part of the prison and the assaults stopped. According to Villante, he worked up the courage to lodge this complaint in part as a result of his anger over the punishment he received upon the discovery in his cell of weapons he had been forced to hide there by that inmate.

Villante filed a *pro se* complaint alleging claims under 42 U.S.C. § 1983 in the district court on December 29, 1980. After an exchange of papers, including a motion for default by Villante and a motion to dismiss on the pleadings by appellees, counsel was appointed for Villante on September 20, 1983. An amended complaint, filed by counsel for Villante on July 19, 1984, alleged violations of Villante's rights under the federal Constitution and New York law.

On October 30, 1984, appellees renewed their motion for judgment on the pleadings, seeking dismissal pursuant to Fed.R.Civ.P. 12(c) on the grounds that Villante's amended complaint failed to state a claim and that part of the amended complaint was time barred.

Appellees deposed Villante on November 14, 1984. Despite several requests, Villante was never permitted to depose any of the appellees' officials or guards.

On December 10, 1984, Judge Wexler dismissed the claims relating to wrongful punishment for the hidden weapons as time barred and for failure to state a claim on which relief could be granted. He ordered Villante within two weeks to submit a statement setting forth the basis for his assertion that he had made "numerous complaints" to corrections employees prior to the formal complaint on November 28, 1980. In response to that order, Villante submitted an affidavit in which, *inter alia,* he claimed that five corrections officers had witnessed "several occasions" when the assaulting inmate had "choked me and grabbed me and forced me into a cell" and described complaints made about other, earlier incidents of sexual harassment.

In a memorandum and order dated January 28, 1985, Judge Wexler found that the allegations in the affidavit contradicted Villante's deposition statement that he had not reported the sexual assaults to anyone but Officer Marcelly prior to lodging the

formal complaint. Finding that such a contradiction did not create a factual dispute under the rule of *Perma Research & Development Co. v. Singer Co.*, 410 F.2d 572, 577–78 (2d Cir.1969), and apparently finding that the alleged reports to Marcelly did not supply a basis for believing that appellees had acted with gross negligence or willful indifference, Judge Wexler granted summary judgment to appellees and dismissed Villante's state claim for lack of subject matter jurisdiction. Villante appealed.

## DISCUSSION

■ Both of the appellees are agencies of the City of New York. As such, they cannot be held liable under 42 U.S.C. § 1983 solely on the basis of *respondeat superior. Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). "Instead, it is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. at 2037–38. The necessary policy or custom need not be express. While an isolated act of excessive force by a single, non-policymaking municipal employee, standing alone, is insufficient evidence, *see City of Oklahoma City v. Tuttle,* — U.S. —, —, 105 S.Ct. 2427, 2439–43, 85 L.Ed.2d 791 (1985) (Brennan, J., concurring in part and concurring in the judgment), a policy or custom may be inferred from acts or omissions of a municipality's supervisory officials serious enough to amount to gross negligence or deliberate indifference to the constitutional rights of the plaintiff. *Turpin v. Mailet*, 619 F.2d 196, 201–02 (2d Cir.), *cert. denied*, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980); *Owens v. Haas*, 601 F.2d 1242, 1246–47 (2d Cir.), *cert. denied*, 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979). *But see Davidson v. Cannon,* — U.S. —, —, 106 S.Ct. 668,

670–72, 88 L.Ed.2d 677 (1986); *Daniels v. Williams,* — U.S. —, —, 106 S.Ct. 662, 666–67, 88 L.Ed.2d 662 (1986) (Fourteenth Amendment Due Process Clause not violated by government officials' mere lack of due care).

Municipal liability under section 1983 may be predicated on municipal supervisors' knowing acquiescence in the unconstitutional behavior of their subordinates. *Krulik v. Board of Education*, 781 F.2d 15, 23 (2d Cir.1986). Supervisors may be charged with knowledge of unconstitutional behavior when they persistently violate a statutory duty to inquire about such behavior and to be responsible for preventing it, *Doe v. New York City Department of Social Services*, 649 F.2d 134, 145 (2d Cir. 1981), *reaff'd*, 709 F.2d 782 (2d Cir.), *cert. denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983), or when they know of specific risks or hazards to a prisoner and fail to take action to protect him, *McKenna v. County of Nassau*, 538 F.Supp. 737, 741 (E.D.N.Y.) (Pratt, J.), *aff'd*, 714 F.2d 115 (2d Cir.1982). Furthermore, the behavior of subordinate prison officials may evidence a failure to train or supervise sufficiently egregious to amount to gross negligence or deliberate indifference on the part of their superiors and the municipality. *Owens v. Haas*, 601 F.2d at 1246–47.[1]

Municipalities have an affirmative duty to protect those held in their custody. *See Hudson v. Palmer*, 468 U.S. 517, —, 104 S.Ct. 3194, 3199–3201, 82 L.Ed.2d 393 (1984); *Doe*, 649 F.2d at 141–42. Therefore, liability may be based on the grossly negligent or deliberately indifferent failure of custodial officers to protect an inmate from violence by other prison residents, *see Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir.1985), or an official acquiescence in the continued existence of prison conditions which, themselves, are so injurious to prisoners that they amount to a constitutional violation, *see Riley v. Jeffes*, 777 F.2d 143,

---

1. We note that the Supreme Court has granted *certiorari* on *Kibbe v. City of Springfield*, 777 F.2d 801 (1st Cir.1985), *cert. granted,* — U.S. —, 106 S.Ct. 1374, 89 L.Ed.2d 600 (1986), which presents questions involving both the inadequate training theory of liability under section 1983 and the applicability of *Tuttle's* single incident rule to incidents in which more than one municipal employee participated.

147–48 (3d Cir.1985); *see also McKenna,* 538 F.Supp. at 740. In light of these principles, we now examine Villante's claims.

### 1. *Wrongful Confinement*

Upon the discovery of weapons in his cell, Villante was charged with infractions of prison rules. Following a disciplinary hearing at which Villante argued that he had been " 'Set-up' By person or persons alledged [sic] to Be Inmate Jasper or Black," Villante was found guilty of the infractions and sentenced to a period of punitive segregation. Villante's original complaint described his confinement in punitive segregation following the discovery of weapons in his cell and asserted that he had been forced to hide the weapons by the abusing inmate. His amended complaint simply realleged those same facts as one basis for his claim against appellees. The theory of Villante's constitutional claim was that his punishment was wrongful because he was forced to secrete the weapons by the abusing inmate and prison officials should have known such was the case. This claim was dismissed by the district court as time barred and because it failed to state a claim upon which relief could be granted.

■ The time bar holding was apparently premised on a finding that the wrongful confinement claim stated in Villante's amended complaint did not relate back to his *pro se* complaint filed December 29, 1980. This holding was erroneous in light of the liberal relation back policy expressed in Fed.R.Civ.P. 15(c), *see* 3 J. Moore, Moore's Federal Practice ¶ 15.15[3] and cases cited therein, and the rule that *pro se* complaints must be liberally construed. *Massop v. Coughlin,* 770 F.2d 299, 301 (2d Cir.1985) (per curiam) (citing *Haines v.*

*Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). The wrongful confinement claim "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading" as required by Rule 15(c), and thus related back to the original complaint. Because the claim did relate back, it clearly was not barred by the statute of limitations applicable to actions brought under section 1983.[2]

■ The district court was correct, however, in holding that Villante had failed to state a claim upon which relief could be granted. Such a holding is proper where a plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Massop v. Coughlin,* 770 F.2d at 301. Even assuming that prison officials knew that Villante was under the control of the abusing inmate at the time of the weapons incident, that knowledge would be as likely to supply a basis for believing that Villante had chosen to hide the weapons to protect himself as it would support the notion that, as Villante now claims, he was merely following orders. Moreover, Villante was given a hearing, the procedural validity of which he does not attack, where he chose to implicate two other inmates instead of his alleged abuser and where he denied any role in secreting the weapons in his cell. "It must be remembered that the Constitution does not prohibit deprivations of liberty per se. The Constitution prohibits deprivations of liberty *without due process.*" *Patterson v. Coughlin,* 761 F.2d 886, 892 (2d Cir.1985), *cert. denied,* ── U.S. ──, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986). Villante received the process due to him. The punitive segregation that fol-

**2.** We have long applied a three year statute of limitations to New York section 1983 claims, by analogy to N.Y.Civ.Prac.Law § 214, subd. 2 (McKinney Supp.1986). *See Pauk v. Board of Trustees of City University,* 654 F.2d 856, 866 (2d Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982). Section 214, subd. 2 is the New York limitations rule for actions based on liability created by statute. Because Villante's original complaint was filed less than two months after the actions that gave rise to

the complaint, we have no occasion to consider here whether a different limitations period might be required by *Wilson v. Garcia,* ── U.S. ──, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), although we note that the *general* personal injury tort limitations period, which seems to be what is mandated for section 1983 actions by *Wilson v. Garcia, id.* ── U.S. at ──, ──, 105 S.Ct. at 1947–49, is also three years in New York. N.Y.Civ.Prac.Law § 214, subd. 5.

lowed was, therefore, not in violation of his constitutional rights.

### 2. *Sexual Assault Claim*

Villante raises procedural and substantive objections to the district court's grant of summary judgment on his sexual assault claim. We discuss the procedural argument first.

Taken together, Federal Rules of Civil Procedure 12(c) and 56(c) require that if a district court considers matters outside of the pleadings, it must then treat a motion for judgment on the pleadings as one for summary judgment and ensure that the opposing party is given at least ten days notice of the conversion. *See Beacon Enterprises v. Menzies*, 715 F.2d 757, 767 (2d Cir.1983); *In re Bristol Industries*, 690 F.2d 26, 28–29 (2d Cir.1982). The essential inquiry when such a conversion is challenged, however, is not whether formal notice was served, but whether, based on the facts and circumstances of the particular case, the opposing party "should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir.1985).

We are not persuaded by Villante's argument that he was surprised by the court's conversion of the motion into one for summary judgment. At the time of the conversion, Villante was represented by counsel. *Cf. Beacon Enterprises*, 715 F.2d at 767 (noting special importance of notice where litigant is *pro se* ). Both Villante and appellees had submitted a variety of affidavits and exhibits that were outside of the pleadings. Appellees had noted, in a memorandum filed two weeks before the court's order, that their motion could be analogized to one for summary judgment, citing Rule 12(c). We are satisfied that Villante was aware of the possibility that appellees' motion to dismiss might be converted to a summary judgment motion.

The question of whether Villante was afforded an adequate opportunity to present evidence in opposition to the motion presents greater problems. In this case, where the plaintiff's claim could only succeed upon a showing of actual or constructive knowledge on the part of supervisory personnel and where facts solely in the defendants' control were therefore at the heart of the necessary proof, the district court's failure to order compliance with the plaintiff's request for deposition discovery was an especially crippling blow. *See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith*, 756 F.2d 230, 236–37 (2d Cir.1985). While "[a] bare assertion that evidence to support a *fanciful* allegation lies within the exclusive control of the defendants, and can be obtained only through discovery, is not sufficient to defeat a motion for summary judgment," *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 251 (2d Cir.1985) (emphasis added), "a denial of access to *relevant* information weighs in favor of the party opposing a motion for summary judgment," *Burlington Coat Factory Warehouse v. Esprit de Corp.*, 769 F.2d 919, 925 (2d Cir.1985) (emphasis added).

■ We hold that the district court's failure to order deposition discovery of any of appellees' officials was an abuse of discretion which deprived Villante of an adequate opportunity to respond to the converted summary judgment motion. The denial of discovery was improper because the facts which might reasonably have been obtained thereby would have answered the key question of whether appellees' supervisory officials knew or should have known of the assaults being perpetrated upon Villante. Villante's substantive attack on the grant of summary judgment addresses various ways in which such actual or constructive knowledge might have been shown. We turn now to those substantive issues.

■ The district court apparently discarded the notion that Villante's allegation of repeated complaints to Officer Marcelly could support a constitutional claim against

appellees, finding that the quick response to Villante's formal complaint to a deputy warden "strongly suggest[ed]" that appellees were neither grossly negligent nor willfully indifferent to Villante's rights. J.App. at 209. This finding overlooks the line of cases holding that the improprieties of subordinate officers may evidence a grossly negligent failure to train or supervise. *See Turpin v. Mailet,* 619 F.2d at 202; *Owens v. Haas,* 601 F.2d at 1246–47. Such a failure might be indicated by proof that Marcelly was repeatedly asked to protect Villante from assault and that Marcelly not only failed to protect Villante but also actively aided the assailant.

Even if the proof as to Marcelly's actions alone were not enough to support Villante's claim, evidence that on several occasions no less than five named corrections officers watched and did nothing while the assailant was forcibly dragging Villante away to his lair certainly would tend to prove that there had been a gross failure in those officers' training. *See Owens,* 601 F.2d at 1246; *see also Davidson v. Cannon,* —— U.S. at ——, 106 S.Ct. at 670–72 (implying that constitutional claim could be founded upon an attack by one prisoner on another "where officials simply stood by and permitted the attack to proceed"). The district court erred in finding that the allegation about the guard witnesses was in contradiction of Villante's deposition testimony and therefore without weight under *Perma Research & Development Co. v. Singer Co.,* 410 F.2d at 577–78. Villante testified in his deposition that he did not "report" the sexual assaults to any officer other than Marcelly prior to his formal complaint, that only inmates were present in the prison dayroom during the assaults of November 22 and 24 and that only inmates could see into the cell where Villante was taken on those dates. Villante was never asked whether any guards had *witnessed* others in the series of sexual assaults which he alleged to have continued for a period of more than a month. Appellees' argument that Villante's statement about guard witnesses is only a vague or conclusory allegation might have more force if Villante had

been permitted to depose any of the guards whom he specifically accuses of inaction.

Like the district court, appellees seem to rely on the quick action in response to Villante's formal complaint to a deputy warden as conclusive proof that they were neither willfully indifferent nor grossly negligent. If it were the law that a custodial agency could see or hear no evil prior to the arrival on its supervisor's desk of a formal, written complaint from the victim, then no amount of improper conduct by lower level custodial officials, standing alone, could ever support a constitutional claim. While prison supervisory officials are not required to be omniscient, they do have a duty to make reasonable inquiries into the activities of their subordinates and the condition of the inmates held in their custody. *See Gross v. Henderson,* 79 A.D.2d 1086, 435 N.Y.S.2d 823, 825 (4th Dep't) ("Prison officials are solely responsible for the preservation of order and security in the facilities they administer....") (citing N.Y.Correct.Law § 112, which imposes "duty to inquire into all matters connected with said correctional facilities" upon commissioner of correction, *id.* at subd. 1 (McKinney Supp.1986)), *leave to appeal denied,* 53 N.Y.2d 605, 440 N.Y. S.2d 1025, 422 N.E.2d 834 (Ct.App.1981); *see also Doe v. New York City Department of Social Services,* 649 F.2d at 141– 42 (noting greater degree of access to information available to prison supervisors than is available to administrators of foster care agencies). While appellees' prompt response to Villante's formal complaint speaks well for them, it does not eliminate the possibility that their actions or inactions prior to the complaint amounted to deliberate indifference.

Villante alleges that he was the victim of a pattern of sexual threats and abuse virtually from the time he arrived at the QHD and that appellees' actions in response to the problem exacerbated it rather than cured it. Proof that such threats and abuse were a condition of confinement at

the QHD might, itself, support a claim of liability on the part of appellees. *See McKenna v. County of Nassau,* 538 F.Supp. at 739–41 (injury caused by prison overcrowding); *cf. Ayers v. Coughlin,* 780 F.2d at 209 (reckless or intentional failure to protect inmate from violence by other inmates as basis for Eighth Amendment claim). To prevail on such a claim, Villante would have to prove that there was a pervasive risk of harm to him from other prisoners and that prison officials displayed deliberate indifference to the danger. *Riley v. Jeffes,* 777 F.2d at 147. Villante should be afforded the opportunity to prove, for example, that appellees were on notice that he was a continuous target of sexual harassment. Given proof of such notice, he might then be able to prove that appellees' placing him in protective custody near the assaulting inmate and then moving both him and that inmate to another protective custody area were grossly negligent.

Because genuine issues of material fact exist as to appellees' gross negligence or willful indifference, particularly with regard to alleged failures to train and supervise and to monitor prison conditions, and because Villante was not afforded an adequate opportunity to discover proof of these facts, we reverse the grant of summary judgment and remand this case for further proceedings. The part of the district court's judgment that dismissed Villante's wrongful confinement claim is affirmed.