**Martin L. DAVIS, Plaintiff,**

v.

**NMU PENSION & WELFARE PLAN, Defendant.**

**No. 89 Civ. 8081 (LAP).**

United States District Court, S.D. New York.

Dec. 22, 1992.

Palmeri, Gaven & Soberman by Daniel F. Gaven, New York City, for plaintiff.

Phillips Cappiello Kalban Hofmann & Katz, P.C. by Sidney H. Kalban, New York City, for defendant.

## OPINION

PRESKA, District Judge.

Defendant, the NMU Pension & Welfare Plan (the "Plan"), has moved to dismiss this action on the ground that it is barred by the statute of limitations. For the reasons set forth below, the Plan's motion is denied.

### I. Background

Plaintiff, Martin L. Davis ("Davis"), worked as a seaman on various ships and was a member of the National Maritime Union (the "Union") from 1944 through January 1984 when he retired. Davis Aff. ¶¶ 2–3, 11. Davis participated in the Plan, which, as explained further below, is related to the Union, from the Plan's inception in 1950, and Davis presently receives from the Plan a pension of $84 per month. Davis Aff. ¶¶ 4, 12.

On December 6, 1990, Davis instituted this lawsuit *pro se* by filing a complaint (the "Complaint") seeking increased pension benefits from the Union, the sole named defendant, pursuant to the Age Discrimination in Employment Act (the "ADEA"). On September 14, 1990, Davis filed an amended complaint (the "Amended Complaint") naming only the Plan as defendant and claiming increased pension benefits pursuant to the Employees' Retirement Security Act ("ERISA"). Davis filed a subsequent amended complaint (the "Second Amended Complaint") also naming only the Plan as defendant and also grounded on ERISA on July 20, 1992.

Three distinct issues are critical to deciding whether Davis timely instituted this action: (1) what statute of limitations applies; (2) when that statute of limitations began to run; and (3) whether the Second Amended Complaint relates back to the filing of the Complaint. I find that a six-year statute of limitations applies to this action and began to run on May 4, 1984 when Davis' first application for pension benefits was denied after he retired. Be-

cause I also find that the Second Amended Complaint relates back to the filing of the Complaint on December 6, 1990, this action is not barred by the statute of limitations, and the Plan's motion is denied.

## II.  Applicable Statute of Limitations

■  At first glance, the applicability to this action of New York's six-year statute of limitations period under § 213 of New York's Civil Practice Law and Rules ("CPLR") seems clear.  *Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Benefit Plan,* 698 F.2d 593, 598 (2d Cir.) (CPLR § 213 limitations period applies to ERISA cause of action), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983); *Bologna v. NMU Pension Trust of NMU Pension & Welfare Plan,* 654 F.Supp. 637, 639 (S.D.N.Y.1987).  The Plan maintains, however, that the two-year-ninety-day limitations period contained in its regulations (the "Plan Regulations")[1] shortened the six-year period because the Plan Regulations constitute a written agreement between Davis and the Plan pursuant to CPLR § 201.[2]  I disagree.

CPLR § 201 expressly demands a "written agreement" in order to shorten a limitations period.  Although some dispute exists in this Court as to what constitutes a written agreement under § 201, I find that the Plan Regulations are insufficient.  *Compare Bologna,* 654 F.Supp. at 639–41 (limitations period contained in the Plan Regulations inapplicable) *with Scheirer v. NMU Pension & Welfare Plan,* 585 F.Supp. 76 (S.D.N.Y.1984) (limitations period contained in the Plan Regulations applicable).

The Plan's argument fails for the simple reason that the parties did not mutually agree upon the Plan Regulations.  The Plan's Board of Trustees (the "Trustees") unilaterally issued the Plan Regulations, and neither Davis nor the Union on behalf of Davis negotiated the limitations period contained therein.  The Plan's argument under CPLR § 201 would be significantly stronger if the shortened limitations period was contained in the actual trust agreement establishing the Plan or in collective bargaining agreements.  *See Bologna,* 654 F.Supp. at 639–40.

To the extent that the Plan asserts that its trust agreement did authorize the shortened limitations period, I find that the Plan has made an insufficient showing to meet the requirements of CPLR § 201.  *Id.; Stanley R. Benjamin, Inc. v. Fidelity & Casualty Co. of New York,* 72 Misc.2d 742, 340 N.Y.S.2d 578 (Sup.Ct.1972) (written agreement strictly construed against party invoking CPLR § 201).  The Plan has not presented any language in the trust agreement or a collective bargaining agreement which speaks directly to the establishment of a shortened limitations period.  In addition, the trust agreement can be construed to authorize regulations affecting only internal procedures and not the institution of lawsuits.  *Bologna,* 654 F.Supp. at 640.[3]

■  Furthermore, a limitations period shortened under CPLR § 201 must be reasonable under the circumstances.  *See Hart v. Anderson,* No. 77 Civ. 2680 (MJL), slip op. at 23 (S.D.N.Y. April 24, 1981), *aff'd mem.,* 671 F.2d 492 (2d Cir.1981); *John J. Kassner & Co., Inc. v. City of New York,* 46 N.Y.2d 544, 415 N.Y.S.2d 785, 389 N.E.2d 99 (Ct.App.1979); *see also Spataro*

---

**1.**  Section 21.80 of the Plan Regulations states as follows:
"No action at law or in equity shall be brought to recover under these Rules and Regulations ... unless brought within two years and ninety days after filing of the claim upon which the cause of action is based."

**2.**  "An action, including one brought in the name or for the benefit of the state, must be commenced within the time specified in this article unless a different time is prescribed by law or a shorter time is prescribed by written agreement. No court shall extend the time limited by law

for the commencement of an action."  CPLR § 201.

**3.**  In finding that the Plan Regulations do not constitute a written agreement under CPLR § 201, I disagree with the argument that a written agreement exists because Union members made up one half of the Trustees, who, as stated above, adopted the Plan Regulations.  *Compare Scheirer,* 585 F.Supp. at 79 (finding written agreement) *with Bologna,* 654 F.Supp. at 640–41 (not finding written agreement).

*v. Kloster Cruise, Ltd.*, 894 F.2d 44 (2d Cir.1990) (sea carriers must reasonably communicate limitations period to passengers). In this case, it appears that the Plan did not communicate the shortened limitations period to Davis until his retirement; only at that time did the Plan distribute a Summary Plan Description to Davis. Davis Aff. ¶ 15; Aff. of Albert Franco ¶ 16. Although the Plan sent Davis several form letters over the years regarding his pension benefits, these letters did not notify Davis of the shortened limitations period. In view of these circumstances, the shortened limitations period contained in the Plan Regulations would not be reasonable even if the Plan Regulations did constitute a written agreement. *Cf. Hart*, slip op. at 16 (booklet containing shortened limitations period was regularly mailed to union members).[4]

### III. *Accrual of Statute of Limitations*

An ERISA action such as this accrues for statute of limitations purposes when there is a clear repudiation of the plaintiff's right to trust benefits. *Miles*, 698 F.2d at 598. Davis asserts that he did not receive a clear repudiation of his right to trust benefits until the Plan rejected his post-retirement application for benefits. I agree.

Despite the fact that Davis began participating in the Plan in 1950, the Plan contends that Davis should not receive pension credits for years worked prior to 1972. Whether the Plan properly canceled these pension credits is the underlying dispute between the parties.

Upon receiving notification from the Plan that its calculations eliminated pension credits earned by Davis prior to 1972, Davis protested the cancellation and requested a hearing in a letter dated January 4, 1979 and typed on Plan stationery. Franco Aff. ex. 5. In response to this letter, the Trustees reviewed Davis' record, and the Plan confirmed its calculation of pension credits in a letter to Davis dated February 8, 1979. Franco Aff. ex. 7. The Plan asserts that the February 8, 1979 letter constituted a repudiation of Davis' right to benefits sufficiently clear to begin accrual of Davis' cause of action. This cannot be the case.

First, although Davis requested a hearing regarding the cancellation of his pre–1972 pension credits, Davis' January 4, 1979 letter did not constitute an application for benefits, and the system established by the Plan for reviewing the denial of benefits was specifically designed to address benefit applications. Davis Aff. ex. 6 at 31–32, 72–75 (Summary Plan Description and Plan Regulations § 19). Thus, the review mechanism which the Plan initiated upon receipt of Davis' letter of protest was not contemplated by the Plan Regulations; it was entirely *ad hoc* and not part of the published procedures.

Second, the form letter by which the Plan notified Davis of the cancellation of pension credits stated as follows:

> The following ESTIMATE OF YOUR PENSION CREDIT is being provided for your convenience and should *not* be construed as a complete and final analysis. A final determination of your pension status will be made when you file an application for retirement.

Franco Aff. ex. 4 (emphasis in original). This language emphasized the fact, as apparent from the review mechanism set out in the Summary Plan Description and the Plan Regulations, that the Plan's calculations were not final until a member applied for benefits.

Third, at the time the Trustees issued their decision, Davis maintained the potential for curing the cancellation of pre–1972 pension credits through continued service. The Plan Regulations contained specific rules regarding the cure of "breaks in service" such as those which prompted the cancellation of Davis' pre–1972 pension credits. Davis Aff. ex. 6 at 61–63 (Plan

---

**4.** As discussed below, the Plan maintains that whatever limitations period applies to this action accrued prior to Davis' retirement. If this assertion were correct, the inadequacy of the shortened limitations period would be even more manifest—the limitations period would have elapsed without notification to Davis that it had been shortened.

Regulations § 16). Again, the very system established by the Plan required that the Trustees' determination not be a final one.

Thus, the Plan established a system which reviewed Plan determinations only at the time of a member's retirement when an application for benefits was made. Today's holding that plaintiff's claim accrues after such review is fully consistent with that system. That system was sensible in that it did not burden members of the Union with the responsibility of maintaining a constant vigilance over the Plan's calculation of pension credits and it did not require the institution of numerous lawsuits by members seeking review of provisional Plan decisions. *See Morgan v. Laborers Pension Trust Fund for Northern California,* 433 F.Supp. 518, 522 n. 5 (N.D.Cal. 1977).

The Plan relies extensively upon a recent decision of the Ninth Circuit which held that a cause of action accrued upon the denial of service credits by the defendant pension plan even though the denial was prior to the plaintiff's application for benefits. *Martin v. Constr. Laborer's Pension Trust for Southern California,* 947 F.2d 1381 (9th Cir.1991). There, Martin filed an application with the plan in 1979 to determine his pension credits and was informed that credit for years prior to 1962 was cancelled due to a break in service from 1962 to 1964. With its determination, the plan informed Martin of his right to appeal. Martin did appeal, and a hearing was held at which Martin was represented by counsel and presented evidence. *Id.* at 1383 n. 3. Subsequently, the plan advised Martin in November of 1982 that his appeal had been rejected.

Almost five years later, Martin sought to have the plan reopen his case based on new evidence. The plan once again determined that Martin had lost his pre–1962 pension credits, and Martin once again appealed. The plan denied the appeal in part on the

ground that the statute of limitations had run on the original denial of Martin's application. Martin thereafter sued the plan.

The Ninth Circuit, affirming the district court's dismissal of the action on statute of limitations grounds, found that Martin's claim arose in November of 1982 when he exhausted the plan's internal remedies, that is, upon the "clear and continuing repudiation of his claim." *Id.* at 1385. In its decision, the Ninth Circuit noted that cases finding claims to arise upon the denial of an application for benefits were not in conflict ·with the requirement of a "clear and continuing repudiation ... but rather, are an application of that rule to the facts before them." *Id.*

In the present case, there was no "clear and continuing repudiation" of Davis' claim in 1979 because (1) Davis maintained the opportunity to cure the cancellation of his pension credits and (2) he was expressly advised by the Plan that cancellation of his pension credits "should *not* be construed as a complete and final analysis" and that a final determination of pension status would be made upon application for retirement. The Plan's review procedure and correspondence to Davis contemplated that no final determination would be made by the Plan until Davis applied for benefits.

Accordingly, the facts of this case dictate that Davis' cause of action accrued when the Plan first denied Davis' application for benefits. Davis first applied for benefits from the Plan in early 1984, just after he retired; the Plan denied Davis' application by letter dated May 4, 1984, and Davis' claim arose on that date. Davis Aff. ¶ 12, ex. 5; Pltf.'s Supplemental Mem. of Law in Opp'n to Def.'s Mot. to Dismiss at 2.[5]

### IV. *Relation Back to Complaint*

Davis had to stop the statute of limitations from running by May 4, 1990 in order for this action to be timely. Davis did toll the statute of limitations when he filed the Complaint on December 6, 1989.[6] The Plan

---

**5.** The Plan refused to provide Davis with any benefits upon his post-retirement application. In September 1986, the Plan awarded Davis his current benefit of $84.40 per month which, in

February 1987, was made retroactive to February 1984.

**6.** The filing of the Complaint, as opposed to service, tolls the statute of limitations in cases

argues that the Second Amended Complaint does not relate back to the Complaint and that the statute of limitations bars this action. The Plan's arguments are not persuasive.

The Complaint is a standard form made available by the Court's *pro se* office. The printed allegations of the Complaint state that the action is brought pursuant to the ADEA. Davis himself completed several parts of the Complaint; Davis named the Union as defendant, and he noted among the alleged facts his receipt of $84 per month in pension benefits instead of $600 to $700. Compl. ¶ 9.

With the Amended Complaint, Davis named the Plan as defendant and provided a clearer explanation for the basis of his suit: "[the Plan] is paying me a pension of $84 a month, when I should be getting much more money, because I have worked in a union job since 1944 and the pension plan started in 1951." Am.Compl. ¶ 1(c). The Amended Complaint also changed the grounds for suit from ADEA to ERISA. Am.Compl. ¶ 1(d). The Second Amended Complaint, the first filed by Davis with the assistance of counsel, added significantly to the allegations but essentially asserted the same underlying claim for increased pension benefits.

Whether this action is timely as to the Plan depends upon whether the Second Amended Complaint is deemed to relate back to the Complaint under Fed.R.Civ.P. 15(c).

Relation back is dependent upon four factors, all of which must be satisfied: (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for the mistake concerning identity, the action would have been brought against it; (4) the second and third requirements must have been fulfilled within the prescribed limitations period.

*Schiavone v. Fortune*, 477 U.S. 21, 29, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986).[7]

■ As to the first factor, the Plan contends that because the Complaint alleged age discrimination and the Amended Complaint alleged violations of ERISA, the two claims did not arise out of the same conduct. Clearly, the Complaint does not set out how the Plan allegedly miscalculated Davis' pension benefits in the same detail subsequently alleged in the Second Amended Complaint. Nevertheless, Davis has continuously alleged the same underlying transaction or occurrence—a deficiency in his pension benefits. Because Davis asserts the same basic claim in both the Complaint and the Amended Complaint, I find that the first factor of the *Schiavone* test is met. *See Villante v. Dep't of Corrections of City of New York*, 786 F.2d 516, 520 (2d Cir.1986) (*pro se* complaints to be construed liberally).

such as this where a state limitations period is applied to an action founded on federal law. *See Salahuddin v. Harris*, 657 F.Supp. 369, 372–74 (S.D.N.Y.1987). Even if only service of the Complaint stopped the statute of limitations, service appears to have been accomplished on April 24, 1990—almost two weeks before the end of the limitations period. *See* U.S. Marshals Service Process Receipt and Return.

7. Until December 1, 1991, Rule 15(c) read as follows:

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satis-

fied and, within the period provided by law for commencing the action against the party to be brought in by amendment that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Amendments to Rule 15(c) effective December 1, 1991 apply only to the Second Amended Complaint. The Plan does not challenge the relation back of the Second Amended Complaint to the Amended Complaint—relation back is clear because the claims asserted in these two complaints are nearly identical. The dispute before the Court concerns the changes made by Davis to the Complaint.

■ The second *Schiavone* factor, in combination with the fourth factor, requires that the Plan have received notice of the institution of suit against the Union prior to May 4, 1990. Official service of the Complaint upon the Union occurred at the latest on April 24, 1990.[8] Davis asserts that the Plan also received notice of the Complaint prior to May 4, 1990 on the basis of three facts: (1) the Trustees included six representatives of the Union (Davis Aff. ex. 6 at 3 (Summary Plan Description)); (2) the Plan and the Union had offices in the same building; and (3) the Plan and the Union were represented by the same law firm ("PCKH & K").

Several courts have held under similar circumstances that notice to counsel constitutes notice to a defendant for purposes of Rule 15(c). *See, e.g., Edwards v. Occidental Chem. Corp.*, 892 F.2d 1442, 1447 (9th Cir.1990); *Barkins v. Int'l Inns, Inc.*, 825 F.2d 905 (5th Cir.1987) (and cases cited therein). The Second Circuit has held that the sharing of counsel can constitute proper notice upon "some showing that the attorney(s) knew that the additional defendants would be added to the existing suit." *Gleason v. McBride*, 869 F.2d 688, 693 (2d Cir.1989); *see Hodge v. Ruperto*, 739 F.Supp. 873, 881 (S.D.N.Y.1990) (counsel should have known that additional defendants would be added); *Lagana v. Toyofuki Kaiun, K.K.*, 124 F.R.D. 555 (S.D.N.Y.1989).

The circumstances surrounding the Complaint establish that the Plan received either actual or constructive notice of the institution of this lawsuit prior to May 4, 1990. PCKH & K filed the Union's answer

to the Complaint. Among the affirmative defenses included in the answer, the Union asserted that Davis failed to state a claim upon which relief could be granted and that the Union was not a proper party pursuant to Fed.R.Civ.P. 10(a). Viewing the Complaint's allegations regarding Davis' pension benefits together with the Union's answer, it is inconceivable that PCKH & K did not recognize that the Plan was implicated in this lawsuit. A reasonable inquiry, as demanded by Fed.R.Civ.P. 11, into the allegations of the Complaint would have forced PCKH & K to draw the conclusion that Davis in fact sought to state a claim against the Plan.[9] Clearly, PCKH & K then had a duty to inform the Plan of the suit.

Taking into account (1) the fact that PCKH & K in all likelihood notified the Plan of the lawsuit, (2) the fact that the Union and the Plan shared an office building, and (3) the fact that the Trustees included six representatives of the Union, it is very likely that the Plan received actual notice of the Complaint. On this point, it is also noteworthy that PCKH & K *and* any member of the Trustees (including the six representatives of the Union) were designated agents for the service of legal process on the Plan. Davis Aff. ex. 6 at 3 (Summary Plan Description).[10] However, even if there were no actual notice, constructive notice surely existed because PCKH & K should have known, and appears to have in fact known, that the Plan would be added as a defendant.[11] *See Gleason, supra.* Next, regarding the requirement of the second *Schiavone* factor

---

**8.** As the Union filed its answer to the Complaint on March 20, 1990, the Union clearly had received notice of the Complaint prior to April 24, 1990.

**9.** The Union went so far in its answer as to request sanctions against Davis under Rule 11. Clearly, PCKH & K must have undertaken a thorough investigation of the Complaint before it would have sought such severe relief against a plaintiff who both appeared *pro se* and had been a member of the Union for decades.

**10.** A predecessor firm to PCKH & K is listed as agent for service on the copy of the Summary Plan Description before the Court.

PCKH & K in fact accepted service of the Amended Complaint on behalf of the Plan while appearing at a conference before the Court on behalf of the Union. *See* Aff. of Sidney H. Kalban ¶ 5.

**11.** The Union and the Plan appear to share an identity of interest which also supports the Court's conclusion that the Plan received notice of the Complaint. *See In re Allbrand Appliance & Television Co., Inc.*, 875 F.2d 1021, 1025 (2d Cir.1989); *B.S. Livingston Export Corp. v. M/V Ogden Fraser*, 727 F.Supp. 144 (S.D.N.Y.1989).

that the Plan have received sufficient notice in order that it not be prejudiced, the record discloses no prejudice inflicted upon the Plan.

Finally, for the same reasons as stated above, I find that the third *Schiavone* factor is met because the Plan knew or should have known that, but for Davis' mistake in the Complaint, this lawsuit would have initially been brought by Davis against the Plan.

### V. *Conclusion*

This lawsuit illustrates the numerous pitfalls into which even a diligent *pro se* plaintiff can fall. The law of statutes of limitations nevertheless permits Davis to go forward. Accordingly, the Plan's motion to dismiss is denied.

SO ORDERED.