GEORGE B. DANIELS, United States District Judge
Plaintiff B. Braxton/Obed-Edom, pro se , is a member of the Lesbian Gay Bisexual Transgender ("LGBT") community. Plaintiff brings this action pursuant to 42 U.S.C. § 1983, as well as the Eighth and Fourteenth Amendments of the United States Constitution, alleging that Defendants failed to protect Plaintiff from assault and harassment by male inmates while Plaintiff was a pretrial detainee at the Manhattan Detention Center ("MDC"). (See generally First Am. Compl. ("FAC"), ECF No. 29.) Defendants moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (ECF No. 76.) Before this Court is Magistrate Judge Stewart D. Aaron's December 20, 2018 Report and Recommendation, recommending that this Court grant in part and deny in part the motion by: (1) granting Defendants' motion to dismiss all claims against Defendants Martinez, Chai, and Glover, but denying Defendants' motion to dismiss the claims against Defendants Ponte, Moses, and King; (2) denying Defendants' motion as to the qualified immunity defense; (3) denying Defendant's motion to dismiss the § 1983 claim against the City; (4) granting Defendants' motion to dismiss Plaintiff's equal protection claim; and (5) granting Defendants' motion to dismiss Plaintiff's negligence claims against the City and County. (Report and Recommendation ("Report"), ECF No. 102, at 27.) This Court ADOPTS Magistrate Judge Aaron's Report.
I. FACTUAL BACKGROUND [1]
Plaintiff identifies as a "gender non-conforming bi-sexual gay male[.]" (Id. at 2 *735 (quoting FAC at 6) (internal quotation marks omitted).) Plaintiff was a pre-trial detainee at MDC from November 2015 through April 2016. (See id. ) On November 20, 2015, Plaintiff called 311 to express concern about Plaintiff's housing situation because of Plaintiff's LGBT status. (Id. (quoting FAC at 7; see also PL's Mem. of Law in Opp'n to Def.'s Mot. to Dismiss ("Opp'n"), ECF No. 90, Ex. T at 91) (internal quotation marks omitted).) A 311 representative emailed "the Prisoner's Rights Project at The Legal Aid Society" about the call, where Dale Wilker is a staff attorney. (Report at 2 (internal quotation marks omitted).) Wilker emailed the "Constituent Services" staff at the Board of Corrections ("BOC") and individual members of the BOC, including Defendants Martha King, Felix Martinez, Park Chai, and Tonya Glover. (Report at 2 (quoting FAC at 7; Opp'n, Ex. T at 91).) Someone responded on November 24, 2015, stating that Plaintiff had completed an application for the Transgender Housing Unit ("THU"), which was under review. (See id. at 2-3 (citing Opp'n, Ex. T at 91.)
Following this exchange, Plaintiff details more than ten written communications-including letters, emails, and grievances-that Plaintiff sent over a five-month period to Defendants Ponte, Moses, and King directly, discussing the threats and abuse that Plaintiff feared (and eventually experienced) while awaiting transfer to protective housing.[2] (See id. at 3-7.) Simultaneously with these communications, Plaintiff again called 311 to report certain grievances. Wilker then sent more emails to Defendants King, Chai, Glover, Martinez, and others, urging them to place Plaintiff in some form of protective housing. (See id. at 3-5.) Despite Plaintiff's complaints, Plaintiff's THU application was denied on January 13, 2016, and Plaintiff was never transferred to protective housing.[3]
II. LEGAL STANDARDS
A. Report and Recommendations.
A court "may accept, reject, or modify, in whole or in part, the findings or recommendations" set forth in a magistrate judge's report. 28 U.S.C. § 636(b)(1)(C). The court must review de novo the portions of a magistrate judge's report to which a party properly objects. Id. Portions of a magistrate judge's report to which no or "merely perfunctory" objections are made are reviewed for clear error. See Edwards v. Fischer , 414 F.Supp.2d 342, 346-47 (S.D.N.Y. 2006) (citation omitted). Clear error is present only when "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." United States v. Snow , 462 F.3d 55, 72 (2d Cir. 2006) (internal quotation marks and citation omitted).
The parties did not file written objections. (See Report at 27.) Accordingly, this Court reviews the Report for clear error.
B. Rule 12(c) Judgment on the Pleadings Standard.
A party may move for judgment on the pleadings "[a]fter the pleadings are *736 closed-but early enough not to delay trial[.]" Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate if, from the pleadings, the moving party is entitled to judgment as a matter of law." Burns Int'l Sec. Serv's, Inc. v. Int'l Union, United Plant Guard Workers , 47 F.3d 14, 16 (2d Cir. 1995). The standard for addressing a motion for judgment on the pleadings pursuant to Rule 12(c) is the same as the standard used in evaluating a motion to dismiss under Rule 12(b)(6). See, e.g., L-7 Designs, Inc. v. Old Navy, LLC , 647 F.3d 419, 429 (2d Cir. 2011) ; Bank of New York v. First Millennium, Inc. , 607 F.3d 905, 922 (2d Cir. 2010) ; Ziemba v. Wezner , 366 F.3d 161, 163 (2d Cir. 2004). To survive a 12(c) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ).
A complaint's factual allegations must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Iqbal , 556 U.S. at 678, 129 S.Ct. 1937. A court considers a number of factors in determining plausibility, including "the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." L-7 Designs, Inc. , 647 F.3d at 430. In the context of a motion to dismiss, a court must only "assess the legal feasibility of the complaint, not ... the weight of the evidence which might be offered in support thereof." Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York , 375 F.3d 168, 176 (2d Cir. 2004) (internal quotations mark omitted) ). The court may also consider "any written instrument attached to the complaint as an exhibit, any statement or documents incorporated in it by reference, and any document upon which the complaint heavily relies." In re Thelen LLP , 736 F.3d 213, 219 (2d Cir. 2013).
Pro se complaints are held "to less stringent standards than formal pleadings drafted by lawyers[.]" Haines v. Kerner , 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) ; see also Boykin v. KeyCorp , 521 F.3d 202, 213-14 (2d Cir. 2008). In fact, pro se pleadings shall be read " 'to raise the strongest arguments that they suggest.' " Green v. United States , 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson , 89 F.3d 75, 79 (2d Cir. 1996) ). "[D]ismissal is nevertheless appropriate where it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle [the plaintiff] to relief." Rodriguez v. Weprin , 116 F.3d 62, 65 (2d Cir. 1997) (internal quotation marks omitted).
C. 42 U.S.C. § 1983 Supervisory Liability and Personal Involvement
§ 1983 provides, in relevant part, "[e]very person who, under color of any statute ... subjects ... any [United States] citizen ... or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]" 42 U.S.C. § 1983. "It is 'well-settled' that § 1983 does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere." Morris-Hayes v. Board of Educ. of Chester Union Free Sch. Dist. , 423 F.3d 153, 159 (2d. Cir. 2005) (citing Oklahoma City v. Tuttle , 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) ).
*737 Personal involvement "is a prerequisite to an award of damages under § 1983." Moffitt v. Townof Brookfield , 950 F.2d 880, 886 (2d Cir. 1991) (internal quotation marks omitted). There are five ways that a supervisory defendant can be "personally involved" for purposes of a § 1983 violation:
(1) [T]he defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.
Colon v. Coughlin , 58 F.3d 865, 873 (2d Cir. 1995).
D. Deliberate Indifference and Failure to Protect.
Many courts have discussed deliberate indifference under the purview of prisoner protection. This theory is most often brought up in conjunction with the Eighth Amendment, which "imposes duties on [prison] officials [to] take reasonable measures to guarantee the safety of the inmates[.]" Farmer v. Brennan , 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (internal quotation marks and citations omitted). A two-part test is used to determine whether a prison official has violated the Eighth Amendment. "First, the deprivation alleged must be, objectively, 'sufficiently serious,' ... result[ing] in the denial of 'the minimal civilized measure of life's necessities.' " Id. at 834, 114 S.Ct. 1970 (internal citations omitted). For a claim "based on a failure to prevent harm, the inmate must show that [the inmate] is incarcerated under conditions posing a substantial risk of serious harm." Id. Second, "a prison official must have a 'sufficiently culpable state of mind[,]' " for which "deliberate indifference to inmate health or safety" is sufficient. Id. (internal quotation marks and citations omitted); see also Nielsen v. Rabin , 746 F.3d 58, 63 (2d Cir. 2014) ("Deliberate indifference is a mental state equivalent to subjective recklessness .... This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result."); Cash v. Cty. of Erie , 654 F.3d 324, 335 (2d Cir. 2011) (stating that "an affirmative duty, by its nature, implies a proactive responsibility to assess the risks of harm presented by given circumstances and to take reasonable preventive measures in advance of harm occurring, not simply to respond to harms only after they occur.").
III. MAGISTRATE JUDGE AARON'S REPORT
A. Plaintiff's Claims Against Commissioner Ponte, Superintendent Moses, and BOC Director King Should Not Be Dismissed.
Because Plaintiff's amended complaint and the accompanying exhibits sufficiently allege that Plaintiff mailed letters to Defendants Ponte, Moses, and King concerning the troublesome housing situation, Magistrate Judge Aaron correctly found that "there are questions of fact as to what actions Commissioner Ponte, Superintendent Moses and BOC Director King took in response to [Plaintiff's] letters and whether those actions were reasonable." (Report at 16.) Deliberate indifference "requires that the charged official act or fail to act while actually aware of a *738 substantial risk that serious inmate harm will result," Nielsen , 746 F.3d at 63 (internal citation omitted). Because Plaintiff put those Defendants on notice of the risks Plaintiff faced if not placed in the THU or protective custody generally, Magistrate Judge Aaron accurately found that the complaint sufficiently alleges that "[D]efendants failed to place [P]laintiff in protective custody, or assign [Plaintiff] to housing where Plaintiff would be under greater observation, despite [Plaintiff's] transgender identity and documented history of sexual abuse[.]" (Report at 16-17 (citing Francis v. City of New York , No. 17 Civ. 1453 (LAK) (HBP), 2018 WL 4659478, at *4 (S.D.N.Y. Aug. 21, 2018) ("Courts have found that, when an inmate informs corrections officers about a specific fear of assault and is then assaulted, this is sufficient to proceed on a claim [for] failure to protect.") ).) Therefore, Defendants' motion to dismiss Commissioner Ponte, Superintendent Moses, and BOC Director King is DENIED.
B. The Defendants Are Not Shielded from Suit Under the Doctrine of Qualified Immunity.
The doctrine of "[q]ualified immunity shields public officials from liability for civil damages if their actions were objectively reasonable, as evaluated in the context of legal rules that were 'clearly established' at the time." Poe v. Leonard , 282 F.3d 123, 132 (2d Cir. 2002). When the qualified immunity defense is raised pursuant to a motion to dismiss rather than a summary judgment motion, a "more stringent standard" is applied: "[n]ot only must the facts supporting the defense appear on the face of the complaint, but ... the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of [the] claim that would entitle [the plaintiff] to relief." McKenna v. Wright , 386 F.3d 432, 436 (2d Cir. 2004) (internal quotation marks omitted). Moreover, "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support [the plaintiff's] claim, but also those that defeat the immunity defense." Id. Therefore, "[a] party endeavoring to defeat a lawsuit by a motion to dismiss for failure to state a claim faces a 'higher burden' than a party proceeding on a motion for summary judgment." Id.
Because Plaintiff has alleged facts that would entitle Plaintiff to relief, Magistrate Judge Aaron correctly found that one cannot make the determination of whether Defendants Ponte, Moses, and King's actions were objectively reasonable at the pleading stage. (See Report at 20.) The amended complaint alleges that Plaintiff wrote Defendants frequently about Plaintiff's disturbing housing situation. Therefore, because further discovery can guide this Court in determining if Defendants took any reasonable actions in response to those communications, Defendant's motion as to qualified immunity is DENIED, without prejudice.
C. Defendants Martinez, Chai, and Glover are Dismissed.
Magistrate Judge Aaron's Report correctly found that, "[u]nlike the other [D]efendants, [Plaintiff] does not allege that [Plaintiff] sent specific complaints to BOC members [Chai], Martinez or Glover." (Id. at 18.) Instead, Plaintiff alleges that these Defendants received three emails from Wilker regarding Plaintiff's THU application and housing status, and Wilker's emails were either responded to or his requests were resolved. (See id. at 2-5; 18.) The Defendants' actions thus do not constitute deliberate indifference because, as alleged in the amended complaint, these Defendants were responsive *739 to Wilker after being informed of Plaintiff's housing situation, kept Wilker abreast of the status of Plaintiff's THU application, and facilitated an interview for Plaintiff's subsequent housing area transfer. (Id. at 18.) Therefore, without more, all claims are DISMISSED against Defendants Martinez, Chai, and Glover.
D. The Defendants' Motion to Dismiss Plaintiff's § 1983 Claims Against the City is Denied.
Magistrate Judge Aaron properly found that Plaintiff's allegations that "there was no policy to protect vulnerable inmates by removing them from the housing area upon notification of a deprivation of federal rights and that it was the custom of the City to delay removing LGBT inmates from the housing area until sexual harassment or abuse had occurred[,]" in addition to the allegation that "Commissioner Ponte and Superintendent Moses, among others, were the final policymakers of this custom [is] sufficient to plausibly allege a custom based on the actions of authorized policymakers." (Id. at 21-22 (citing Amnesty Am. v. Town of W. Hartford , 361 F.3d 113, 126 (2d Cir. 2004) ("[A city employee's] action constitutes the act of the municipality and therefore provides a basis for municipal liability where it is taken by, or is attributable to, one of the city's authorized policymakers.").) Municipal liability may be inferred from a supervisor's "knowledge of unconstitutional behavior when [he or she] persistently violate[s] a statutory duty to inquire about such behavior and to be responsible for preventing it, or when [he or she] know[s] of specific risks or hazards to a prisoner and fail[s] to take action to protect [Plaintiff]." Villante v. Dep't of Corr. of City of New York , 786 F.2d 516, 519 (2d Cir. 1986) (internal citations omitted). Therefore, Magistrate Judge Aaron correctly determined that Commissioner Ponte and Superintendent Moses' alleged inaction could be attributed to the City itself. (See Report at 22.)
Plaintiff also alleged that the City failed to train its employees to remove LGBT or other sufficiently vulnerable inmates from the general inmate population when put on notice of potential harm. (See id. ) Municipal liability may also be implied from a municipality's failure to train its employees. See Villante , 786 F.2d at 519 ("[T]he behavior of subordinate prison officials may evidence a failure to train or supervise sufficiently egregious to amount to gross negligence or deliberate indifference on the part of their superiors and the municipality."). In response to Plaintiff's failure to train allegations, Magistrate Judge Aaron correctly notes that "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." (Report at 22 (quoting Connick v. Thompson , 563 U.S. 51, 61, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011) ).) The Report also correctly found that "a plaintiff need not prove and document a failure to train at the pleading stage to state a claim for municipal liability ... given the difficulties inherent in obtaining relevant facts absent discovery." (Id. at 23 (quoting Hernandez v. United States , No. 16 Civ. 6139 (LTS), 2018 WL 1322187, at *10 (S.D.N.Y. Mar. 13, 2018) (citing Amnesty , 361 F.3d at 130 n.10 ) ("It is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage, and therefore need only plead that the city's failure to train caused the constitutional violation.") ).) Therefore, Magistrate Judge Aaron correctly determined that Plaintiff's allegations are sufficient to allow the claim *740 to proceed to discovery. (Id. (citing FAC at 16.) Accordingly, Defendant's motion to dismiss Plaintiff's § 1983 claims against the City is DENIED.
E. Plaintiff's Equal Protection Claim is Dismissed.
In stating an equal protection claim, a plaintiff must allege that a prison official "singl[ed the plaintiff] out alone for that misinterpretation. To establish such intentional or purposeful discrimination, it is axiomatic that a plaintiff must allege that similarly situated persons have been treated differently ." Gagliardi v. Vill. of Pawling , 18 F.3d 188, 193 (2d Cir. 1994) (internal quotation marks omitted) (emphasis added). Because Plaintiff did "not allege any facts regarding similarly situated inmates who were treated differently[,]" Magistrate Judge Aaron correctly determined that the equal protection claim should be DISMISSED. (Report at 24-25.)
F. Plaintiff's Negligence Claims.
Magistrate Judge Aaron correctly determined that Plaintiff's negligence claims against the City and County should be dismissed because the complaint "has not pleaded that [Plaintiff] filed a notice of claim." (Id. at 25 (quoting Radin v. Tun , No. 12 Civ. 1393 (ARR) (VMS), 2015 WL 4645255, at *16 (E.D.N.Y. Aug. 4, 2015) ("Pursuant to New York General Municipal Law § 50-e, a plaintiff who asserts a state law tort claim against a municipal entity or its employees for acts that occurred within the scope of their employment must file a notice of claim within ninety days after the incident giving rise to the claim" and "[f]ailure to timely comply with the notice requirements of GML § 50-e requires dismissal of state law tort claims against a municipal entity and its employees.") ).) However, because Defendants have "failed to make any arguments on the issue of individual liability, including whether the City is required to indemnify any [i]ndividual Defendants," Magistrate Judge Aaron correctly determined that the motion to dismiss the negligence claims against Defendants Ponte, Moses, and King in their individual capacities is DENIED. (Id. )
G. Leave to Amend.[4]
Federal Rule of Civil Procedure 15 requires that a court grant a party leave to amend its pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). This circuit has interpreted 15(a)(2) as a particularly "liberal" standard, see Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC , 797 F.3d 160, 190 (2d Cir. 2015) ; see also Shabazz v. Bezio , 511 F. App'x 28, 31 (2d Cir. 2013) ), and this "liberal" interpretation is particularly true for pro se plaintiffs, see Report at 26 (citing Garay v. Novartis Pharm. Corp. , 576 F. App'x 24, 25 (2d Cir. 2014) ("As a general rule, leave to amend should be freely given, and a pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that [Plaintiff] has a valid claim.").) Therefore, Plaintiff may move to amend by submitting a proposed third amended complaint if further amendment would not be futile.
For the foregoing reasons, Magistrate Judge Aaron's Report is ADOPTED in full and Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.
IV. CONCLUSION
(1) This Court GRANTS Defendants' motion to dismiss all claims against Defendants Martinez, Chai, and Glover, but DENIES
*741 Defendants' motion to dismiss the claims against Defendants Ponte, Moses, and King; (2) Defendants' motion as to the qualified immunity defense is DENIED; (3) Defendant's motion to dismiss the § 1983 claim against the City is DENIED; (4) Defendants' motion to dismiss Plaintiff's equal protection claim is GRANTED; and (5) Defendants' motion to dismiss Plaintiff's negligence claims against the City and County is GRANTED.
The Clerk of Court is directed to close ECF No. 76, accordingly.
SO ORDERED.

A more complete procedural and factual background is set forth in greater detail in the Report and is incorporated by reference herein.

Plaintiff even details a February 25, 2016 encounter, where Plaintiff was sexually assaulted "with what felt like fingers" while coming out of the shower. (See Report at 5-6 (quoting FAC, Exs. 22-23, at 29-30).)

Plaintiff's denial letter states that Plaintiff's transgender status did not "fit the criteria." (See id. at 5 (citing Opp'n, Exs. C and D at 75-76).)

(See Report at 7-8 regarding Plaintiff's attempts to amend the complaint.)